UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLIANZ RISK TRANSFER AG, MARATHON STRUCTURED FINANCE FUND, LP, NEWSTAR FINANCIAL, INC., and MUNICH RE CAPITAL MARKETS NEW YORK, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PARAMOUNT PICTURES CORPORATION, <br><br> Defendant. | No. 1:08-CV-10420 (TPG) |

**DEFENDANT PARAMOUNT PICTURES CORPORATION'S
MEMORANDUM OF LAW IN SUPPORT OF ITS RENEWED MOTION
TO DISMISS THE SECOND AMENDED COMPLAINT IN LIGHT OF
THE UNITED STATES SUPREME COURT'S DECISION IN
*JANUS CAPITAL GROUP, INC.* V. *FIRST DERIVATIVE TRADERS*__**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York  10019
(212) 373-3000

KENDALL BRILL & KLIEGER LLP
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, California  90067
(310) 556-2700

Attorneys for Defendant Paramount Pictures Corporation

# TABLE OF CONTENTS

**Page**

Table of Authorities .................................................................................................... ii

Preliminary Statement ................................................................................................. 1

Argument ...................................................................................................................... 3

    I.      *JANUS* REQUIRES DISMISSAL OF THE SECTION 10(B) AND RULE 10B-5 CLAIM FOR FAILURE TO PLEAD THAT PARAMOUNT WAS THE "MAKER" OF THE STATEMENTS AT ISSUE ........................................ 3

           A.     The *Janus* Court Limited Liability to the "Maker" of a Statement, Which Requires, at a Minimum, Control Over or Attribution for the Statement .................................................................................... 4

           B.     *Janus* Compels Dismissal Here ................................................. 7

    II.     DISMISSAL OF THE STATE LAW CLAIMS IS ALSO WARRANTED ........ 11

Conclusion ................................................................................................................. 13

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bishop* v. *Greystone Props., LLC*,
No. 08 Civ. 6759 (TPG), 2011 WL 1310767 (S.D.N.Y. Mar. 31, 2011)..........................13

*Castiglione* v. *Papa*,
No. 10-2491-cv, 2011 WL 1938666 (2d Cir. May 23, 2011) ...........................................12

*Cent. Bank of Denver, N.A.* v. *First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994) ..........................................................................................................4

*Dorchester Investors* v. *Peak Trends Trust*,
No. 99 Civ. 4696 (LMM), 2002 WL 272404 (S.D.N.Y. Feb. 26, 2002) ............................3

*Greenman-Perdesen, Inc.* v. *Berryman & Henigar, Inc.*,
No. 09 Civ. 0167 (TPG), 2009 WL 2523887 (S.D.N.Y. Aug. 18, 2009) ........................13

*Hallingby* v. *Hallingby*,
574 F.3d 51 (2d Cir. 2009) .............................................................................................12

*Janus Capital Group, Inc.* v. *First Derivative Traders*,
No. 09-525, 564 U.S. ___ (2011) .............................................................................passim

*In re Mutual Funds Inv. Litig.*,
566 F.3d 111 (4th Cir. 2009)..............................................................................................5

*Powell* v. *Gardner*,
891 F.2d 1039 (2d Cir. 1989) .........................................................................................13

*Sharma* v. *Skaarup Ship Mgmt. Corp.*,
699 F. Supp. 440 (S.D.N.Y. 1988)....................................................................................3

*Stoneridge Inv. Partners, LLC* v. *Scientific-Atlanta, Inc.*,
552 U.S. 148 (2008) ..........................................................................................................4

*In re Stylesite Mktg., Inc.*,
Nos. 00B 10099 (SMB), ADV. 00/2286A, 2001 WL 13212
(Bankr. S.D.N.Y. Jan. 2, 2001) ........................................................................................3

*Vega* v. *State Univ. of N.Y. Bd. of Trs.*,
No. 97 Civ. 5767 (DLC), 2000 WL 381430 (S.D.N.Y. Apr. 13, 2000).............................3

*Zadora-Gerlof* v. *AXA Nordstern Art Ins. Corp.*,
No. 01 CV 11828(RO), 2002 WL 31324138 (S.D.N.Y. Oct. 17, 2002)...........................12

## STATUTES AND OTHER AUTHORITIES

15 U.S.C. § 78j(b) ...................................................................................................passim

17 C.F.R. 2401.10b-5 ...........................................................................................passim

28 U.S.C. § 1332 ........................................................................................................12

28 U.S.C. § 1367 ........................................................................................................12

Fed. R. Civ. P. 12(b)(6) ...............................................................................................3

Fed. R. Civ. P. 12(c) ...............................................................................................3, 13

Fed. R. Civ. P. 12(h)(2) ...............................................................................................3

Defendant Paramount Pictures Corporation ("Paramount") respectfully submits this memorandum of law in support of its renewed motion to dismiss the Second Amended Complaint in this action (the "SAC"), or, in the alternative, for judgment on the pleadings, in light of the United States Supreme Court's recent decision in *Janus Capital Group, Inc.* v. *First Derivative Traders*, No. 09-525, 564 U.S. ___ (2011) ("*Janus*").

## Preliminary Statement

Paramount renews its motion to dismiss the complaint in this action, or, in the alternative, seeks judgment on the pleadings, because the United States Supreme Court's recent decision in *Janus* directly and definitively bars the claims that plaintiffs assert here.

In this case, plaintiffs are alleged to be purchasers of securities issued by Melrose Investors LLC ("Melrose"), pursuant to a Private Placement Memorandum ("PPM") that Melrose also issued.  Although that prospectus expressly stated that it was not authored by Paramount, plaintiffs nevertheless purport to bring a securities fraud claim, pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ("Section 10(b)") and Rule 10b-5 promulgated thereunder, 17 C.F.R. 2401.10b-5 ("Rule 10b-5"), against Paramount concerning alleged misstatements and omissions in the PPM.

*Janus*, however, now forecloses any such claim.  There, the Supreme Court made clear that claims under Section 10(b) and Rule 10b-5 cannot be sustained against a party, like Paramount, who was not the "maker" of the statements alleged to be misleading.  Specifically, in *Janus*, the Supreme Court held that a mutual fund adviser could not be held liable under Rule 10b-5 for statements contained in its mutual funds' prospectuses.  As the Supreme Court held, only the actual "maker" of the statements at issue—the party that issued the pertinent disclosure document—could be liable under the Rule.

Thus, in *Janus*, the Court held that only "the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it" can be subject to liability under Rule 10b-5. Using the analogy of a speechwriter and a speechmaker, the Court held that, although a speechwriter may play a substantial role in developing the content of a speech, it is ultimately the person who delivers the speech who controls its content. Therefore, the Court held that, at a minimum, to be held liable under Rule 10b-5, the defendant must have "ultimate authority" over the content and distribution of the statements at issue; further, the Court stated that attribution is "strong evidence" that "a statement was made by—and only by—the party to whom it is attributed." *Janus*, 564 U.S. at ___ (slip op. at 6).

Here, there is no dispute that Melrose was the issuer of the PPM. Additionally, it is clear that Melrose is the attributed author of the PPM. In fact, the PPM, which this Court has previously held to be incorporated by reference in the SAC, *expressly denies attribution to Paramount*. Under *Janus*, these facts end the matter: Melrose, not Paramount, was the maker of the statements at issue.

In fact, plaintiffs merely allege that Paramount "participated" in the drafting of the PPM, and "sponsored" Melrose as a conduit for fundraising. *Janus* makes clear that such allegations are simply not enough to establish Rule 10b-5 liability. Specifically, the *Janus* Court held that respect for the corporate form must trump any arguments that one party "participated" in the making of statements of another, even where the parties are closely connected (as they were in *Janus*).

Indeed, in *Janus*, the Court rejected liability for the mutual fund adviser even though the adviser created the funds at issue, managed them, and even posted the relevant prospectuses on its own web site. The defendant in *Janus* (the investment adviser to the funds)

and the "makers" of the statements (the funds themselves) were substantially more closely connected than Paramount and Melrose are alleged to be connected here. Yet, in *Janus*, the Court held that the close connection between the adviser and its funds still did not make the adviser the "maker" of the statements in the funds' prospectuses. Accordingly, plaintiffs' purported securities law claim clearly fails here.

In short, under *Janus*, it is now beyond doubt that, as a matter of law, Melrose—not Paramount—is the "maker" of the statements in the PPM that form the basis of plaintiffs' claims. Plaintiffs thus cannot plead a violation of Section 10(b) and Rule 10b-5, and the SAC consequently should be dismissed with prejudice.[1]

## Argument

## I.

### *JANUS* REQUIRES DISMISSAL OF THE SECTION 10(B) AND RULE 10B-5 CLAIM FOR FAILURE TO PLEAD THAT PARAMOUNT WAS THE "MAKER" OF THE STATEMENTS AT ISSUE

In *Janus*, the United States Supreme Court spoke clearly and unequivocally as to the requirements for primary liability under Section 10(b) and Rule 10b-5. In short, the Court

---

[1] A number of Judges in this District have recognized that "Rule 12 specifically allows for successive motions to dismiss for failure to state a claim." *Sharma* v. *Skaarup Ship Mgmt. Corp.*, 699 F. Supp. 440, 444 (S.D.N.Y. 1988); *see also Dorchester Investors* v. *Peak Trends Trust*, No. 99 Civ. 4696 (LMM), 2002 WL 272404, at *3 (S.D.N.Y. Feb. 26, 2002) (in adjudicating a successive motion to dismiss, noting that "[d]istrict courts in the Second Circuit have held that successive motions to dismiss for failure to state a claim are not precluded by [Rule] 12(h)(2)"); *In re Stylesite Mktg., Inc.*, Nos. 00B 10099 (SMB), ADV. 00/2286A, 2001 WL 13212, at *2 (Bankr. S.D.N.Y. Jan. 2, 2001) ("a defendant can make successive Rule 12(b)(6) motions"); *Vega* v. *State Univ. of N.Y. Bd. of Trs.*, No. 97 Civ. 5767 (DLC), 2000 WL 381430, at *2 (S.D.N.Y. Apr. 13, 2000) (allowing successive motions to dismiss and noting that "[g]iven the procedural complexity of [the] litigation ... and the tangle of legal theories created by both [the] history and the pleadings, it is understandable that the first motion was unable to address all of the appropriate issues"). In addition, in the alternative, Paramount moves on the same grounds, pursuant to Rule 12(c), for judgment on the pleadings in its favor.

made clear that only the party that actually *made* the statement that is the subject of the claim can be liable for that statement.  That ends plaintiffs' securities fraud claim here.

## A. The *Janus* Court Limited Liability to the "Maker" of a Statement, Which Requires, at a Minimum, Control Over or Attribution for the Statement

Following its decisions in *Central Bank of Denver, N.A.* v. *First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994) (Rule 10b-5 liability does not extend to alleged "aiders and abettors"), and *Stoneridge Investment Partners, LLC* v. *Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008) (Rule 10b-5 liability does not extend to entities that entered into agreements that allowed the securities issuer to issue misleading financial statements), the Supreme Court, in *Janus*, once again addressed the issue of when, with respect to a private plaintiff's claim under Rule 10b-5, third-parties may be held liable for alleged misstatements made by another party.

There were two defendants in *Janus*: the Janus Capital Group, Inc. ("Janus Capital", or the "Parent"), a publicly traded company that "created the Janus family of mutual funds," 564 U.S. at ___ (slip op. at 1); and Janus Capital Management, Inc. ("Janus Management" or the "Adviser"), a wholly-owned subsidiary of the Parent that served as an investment adviser and administrator for certain Janus funds.  *Id.*  Not named as a defendant was Janus Investment Fund (the "Fund"), a business trust owned entirely by mutual fund investors, which operated various mutual funds, for which Janus Management served as the adviser.  The Fund had "no assets apart from those owned by the investors." *Id.* at 1-2.  The Fund was created by the Parent, Janus Capital, and retained the Parent's subsidiary (the Adviser, Janus Management), to be its investment adviser and administrator. *Id.* at 1-2.  At the relevant time period, every officer of the Fund was also an officer of the Adviser. *Id.* at 2.  Additionally, one member of the Fund's board of trustees was associated with the Adviser. *Id.*

The statements at issue in *Janus* were contained in prospectuses issued by the Fund with respect to the Fund's various mutual funds. The statements represented that certain of the Fund's mutual funds "were not suitable" for a specific trading strategy involving market timing. *Id.* The prospectuses went on to say that the Adviser, which managed the funds, "would implement policies to curb the practice." *Id.*

Subsequently, however, the Attorney General of the State of New York filed a complaint, alleging that the Parent had "entered into secret arrangements to permit market timing in several funds run by" the Adviser. *Id.* at 3. The *Janus* plaintiff asserted claims for violations of Section 10(b) and Rule 10b-5 against the Parent and the Adviser. *Id.* at 3, 5. After the District Court dismissed the complaint, the Fourth Circuit held that the complaint stated a claim, concluding that by "participating in the writing and dissemination of the prospectus, [the Parent and the Adviser] *made* the misleading statements contained in the documents." *Id.* at 4 (quoting *In re Mutual Funds Inv. Litig.*, 566 F.3d 111, 121 (4th Cir. 2009) (emphasis in original).) The Supreme Court granted certiorari, and reversed. *Id.* at 5.

In so holding, the Court ruled that, to be primarily liable under Rule 10b-5, a party "must have 'made' the material misstatements" at issue. *Id.* The Court examined the dictionary definition of "make," and found that when "make" is paired with a subsequent verb, it adopts the meaning of that verb; thus, "[o]ne makes a statement by stating it." *Id.* at 6. The Court went on to hold that "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Id.* Accordingly, the Court stated that "[o]ne who prepares or publishes a statement on behalf of another is not its maker" and that "in the ordinary case, attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—and *only* by—the party to

5

whom it is attributed." *Id.* (emphasis added).  The Court then illustrated this point by citing "the relationship between a speechwriter and a speaker," given that "[e]ven when a speechwriter drafts a speech, the content is entirely within the control of the person who delivers it." *Id.* at 6-7.

As relevant here, in rendering its decision, the *Janus* Court expressly rejected certain arguments from the plaintiff and the United States, as *amicus*.  The government argued that "'make' should be defined as 'create.'" *Id.* at 8.  The Court disagreed, holding that "participating in the drafting of a false statement" did not rise to the level of a Section 10(b) or Rule 10b-5 violation.  *Id.* at 9; *see also id.* at 12 (stating that, even if the Adviser "was significantly involved in preparing the prospectuses. . . . this assistance, subject to the ultimate control of [the Fund], does not mean that [the Adviser] 'made' any statements in the prospectuses").

The *Janus* plaintiff argued that the "'well-recognized and uniquely close relationship between a mutual fund and its investment adviser'" was relevant to the Court's analysis, alluding to the "general[]" understanding that "like a playwright whose lines are delivered by an actor," an investment adviser "makes" the statements of its client mutual fund. *Id.* at 9.  The Court rejected that argument as well.  It "decline[d] this invitation to disregard the corporate form," despite "persuasive[]" arguments that "investment advisers exercise significant influence over their client funds." *Id.* at 9-10.  Given that "corporate formalities were observed," the Court noted that the Adviser and the Fund were "legally separate entities." *Id.* at 10.

Accordingly, the Court held that the Adviser "did not 'make' any of the statements in the . . . prospectuses; [the Fund] did." *Id.* at 10-11.  The Court further stated that "[t]here is no allegation that [the Adviser] in fact filed the prospectuses and falsely attributed

them" to the Fund and that nothing "on the face of the prospectuses indicate that any statements therein came from" the Adviser rather than the Fund.  *Id.* at 11.  In response to the *Janus* plaintiff's argument that the Adviser "indirectly" made the statements, the Court—without defining "precisely what it means to communicate a 'made' statement indirectly"—determined that although "[m]ore may be required to find that a person or entity made a statement indirectly . . . *attribution is necessary.*"  *Id.* at 11 n.11 (emphasis added).  The Court also rejected the contention the Adviser should be liable because it provided access to the Fund's prospectuses on its website, concluding that "[m]erely hosting a document on a Web site does not indicate that the hosting entity adopts the document as its own statement or exercises control over its content."  *Id.* at 12 n.12.

### B.   *Janus* Compels Dismissal Here

After *Janus*, plaintiffs in this action cannot maintain their purported Section 10(b) and Rule 10b-5 claim against Paramount, because they have not adequately pleaded that Paramount was the "maker" of the statements at issue in this case, nor can they do so.

Plaintiffs allege in the SAC, as they must, that Melrose, not Paramount, issued the securities that plaintiffs purchased.  (SAC ¶ 2.)  Nor is there any question that Melrose issued the PPM that contains the statements plaintiffs contend were misleading.  (PPM at i.)  As a result, under *Janus*, only Melrose "made" the statements at issue, and Paramount cannot be held liable for them.  That plaintiffs allege that Melrose was "a conduit or instrumentality sponsored or employed by Paramount" (SAC ¶ 18), is not enough to establish Paramount as the maker of the PPM's statements, given that Melrose is clearly a separate legal entity and that the SAC lacks any allegations with respect to flouting the corporate form.  *See Janus*, 564 U.S. at ___ (slip op. at 10) (declining "invitation to disregard the corporate form" in considering whether Adviser was

"maker" of statements and noting that "corporate formalities were observed" and that Fund and Adviser "remain legally separate entities").

Further, as noted above, in *Janus*, the Supreme Court pointed to the fact that nothing "on the face of the prospectuses indicate[d] that any statements therein came from [the Adviser] rather than [the Fund]." *Id.* at 11. Similarly, here, the Melrose PPM is not only completely devoid of any hint that Paramount provided the statements in the PPM, but in fact contains prominent disclaimers—which this Court has previously described as "significant" (Op. (3/31/10) at 14)—proclaiming in bold type that none of the statements within the PPM are to be attributed to Paramount. (*See, e.g.*, PPM at iii ("None of Paramount Pictures Corporation, Viacom Inc., any parent, subsidiary or affiliate thereof has prepared [the PPM].").) Plaintiffs are thus foreclosed by the documents from alleging attribution of the statements to Paramount. Indeed, plaintiffs cannot even allege that Paramount "indirectly" made the statements in the PPM. *See Janus*, 564 U.S. at ___ (slip op. at 11 n.11) ("More may be required to find that a person or entity made a statement, but attribution is *necessary*.") (emphasis added). As a result, under *Janus*, Paramount cannot bear any liability here.

Paramount previously moved to dismiss plaintiffs' original complaint on this very basis. When this Court considered Paramount's arguments on this point, the Court sustained as sufficient plaintiffs' allegations that "Melrose is a mere conduit sponsored by Paramount, who is the original and knowing source of misrepresentations regarding the risk-mitigation techniques

8

to be used in connection with the Melrose Slate." (Op. (3/31/10) at 15.)[2]  But, under *Janus*, being the "source" of an alleged misrepresentation is not enough.  Rather, the touchstone of the analysis for liability is whether a defendant is the "maker" of a statement—*i.e.,* whether a party has "ultimate authority over the statement, including its content and whether and how to communicate it." *Janus*, 564 U.S. at ___ (slip op. at 6).  Thus, whether a party sponsors a "mere conduit" or even is the "original and knowing source" of the statement is no longer enough to establish liability—if that party is not the "maker" of the statement.

A comparison of the facts and circumstances that the Supreme Court found insufficient to sustain a claim against Janus Management, and those alleged here, makes apparent that *Janus* now requires dismissal of the complaint.  For example, in *Janus*, the Parent created the Fund, the Adviser served as the investment Adviser and administrator of the Fund, and the Fund had no assets other than those owned by its investors. *Id.* at 1, 2.  Similarly, here, plaintiffs allege that Melrose "was created at the direction of Paramount" (SAC ¶ 2), was "a conduit or instrumentality sponsored or employed by Paramount" (*id.* ¶ 18), and owned only "aside from a small reserve for administrative services, . . . [revenue participation interests] for all of the films in the Melrose Slate" (*id.* ¶ 19).  The parallels are striking and indistinguishable.

Further, in *Janus*, despite the presence of a "'well-recognized and uniquely close relationship" between the Adviser and the Fund, and the exertion of "significant influence" by the Adviser over the Fund, the Supreme Court held that the Adviser was not the "maker" of the statements in the Fund's prospectuses, emphasizing that the Fund and the Adviser were "legally

---

[2]   Paramount reasserted this argument in connection with its motion to dismiss the SAC; the Court ultimately did not address Paramount's argument on that motion.

separate entities" and that the Fund's "board of trustees was more independent" than was statutorily required. 564 U.S. at ____ (slip op. at 9-10).

The relationship between Melrose and Paramount is substantially more attenuated than the relationship at issue in *Janus*. Melrose is certainly a separate legal entity from Paramount. (*See* PPM at 1 (stating that Melrose is "a newly formed Delaware limited liability company").) And, unlike in *Janus* where the Adviser oversaw the management of the Fund, the PPM provides that independent, third parties Global Securitization Services, LLC and GSS Holding II, Inc.—not Paramount—were to serve as the LLC Manager and the Independent Manager, respectively, of Melrose. (*Id.* at 5, 64-65.) In addition, trustee services for Melrose were provided by another company unaffiliated with Paramount: Wells Fargo Bank, National Association. (*Id.* at 5.) Thus, there is even greater reason to find that Paramount was not the "maker" of the statements at issue here.

Additionally, the *Janus* plaintiff alleged that the Adviser had "significant[] involve[ment] in preparing the prospectuses" at issue. 564 U.S. at ____ (slip op. at 12). So too, here, plaintiffs allege that Paramount was "the source" of statements in the PPM (SAC ¶ 2), and "wrote portions of the PPM directly" (*id.* ¶ 28). But, just as the *Janus* Court found that "[a]lthough [the Adviser], like a speechwriter, may have assisted [the Fund] with crafting what [the Fund] said in the prospectuses, [the Adviser] itself did not 'make' those statements for purposes of Rule 10b-5," so too does any alleged participation by Paramount in sourcing or even drafting sections of the PPM fail to establish that Paramount "made" those statements under Rule 10b-5. 564 U.S. at ____ (slip op. at 12.)[3]

---

[3]   Plaintiffs also allege that Paramount was "the source" of financial information reviewed during their due diligence. (SAC ¶ 28.) In denying Paramount's motion to dismiss the SAC, however, the Court focused on statements within and allegedly omitted from the PPM,

In sum, the statements in the PPM were made by Melrose, not Paramount, and *Janus* thus forecloses any claim by plaintiffs against Paramount under Section 10(b) and Rule 10b-5. Accordingly, this Court should now dismiss that claim with prejudice.

## II.
## DISMISSAL OF THE STATE LAW CLAIMS IS ALSO WARRANTED

Dismissal of the Section 10(b) and Rule 10b-5 claim should also result in dismissal of plaintiffs' purported State law claims.

As an initial matter, this Court's prior ruling indicates that, if the Section 10(b) and Rule 10b-5 claim fails, so should plaintiffs' State law claims, which are based on the same alleged wrongdoing. (Op. (3/31/10) at 20-23.) In its prior ruling, the Court noted the similarities in the pleading standards under Section 10(b) and New York common law fraud, and noted that the lack of any such fraud would also undermine any unjust enrichment claim. *Id.* Dismissal of the State law claims is also particularly appropriate in light of *Janus*: if Paramount did not make the statements at issue, it should not have any liability for those statements under State law either.

---

highlighting paragraph 44 of the SAC and noting that "there were facts, important material facts, which existed at the time of the plaintiff's investments which were not revealed in the PPM." (Tr. (4/12/11) at 32-33.) The Court thus did not mention any "due diligence" materials in rendering its decision.

Even if the Court were to consider the due diligence materials, under *Janus*, plaintiffs' allegations remain insufficient to hold Paramount liable. As noted above, an allegation that Paramount was merely the "source" of these due diligence materials is not enough to establish that it was the "maker" of the statements. *See Janus*, U.S. at ___ (slip. op. at 8) (rejecting Government's argument that "make" should equate with "create" under Rule 10b-5). In addition, plaintiffs confirmed in their opposition brief in the course of the prior motion practice that it was Merrill Lynch, not Paramount, who provided them with "extensive data" and "used this data to create *ten thousand* scenarios depicting what the financial results of an investment in the Melrose Transaction might look like." (Pls.' Opp. Mem. (8/30/10) at 10-11.) Clearly, then, Paramount was not the "maker" of any statements in the due diligence material for purposes of Rule 10b-5.

11

Alternatively, having dismissed the Section 10(b) and Rule 10b-5 claim, this Court should decline to exercise federal subject matter jurisdiction over the SAC. Although plaintiffs allege that this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 (SAC ¶ 13), both Paramount and one of the plaintiffs are Delaware corporations (*id.* ¶¶ 8, 9). Because under § 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business" and because complete diversity is required to assert jurisdiction under § 1332, this Court lacks diversity jurisdiction over this action. *See Hallingby* v. *Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009) ("'[C]itizens of different States' means that there must be complete diversity, *i.e.*, that each plaintiff's citizenship must be different from the citizenship of each defendant.") (citation omitted); *Zadora-Gerlof* v. *AXA Nordstern Art Ins. Corp.*, No. 01 CV 11828(RO), 2002 WL 31324138, at *1 (S.D.N.Y. Oct. 17, 2002) ("A corporation may have dual citizenship for purposes of diversity jurisdiction. In such situations, in order for diversity to exist, the adverse party cannot be a citizen of either state.") (citation omitted).

Thus, the sole basis for this action to remain in this Court is supplemental jurisdiction under 28 U.S.C. § 1367, conferred upon the State law claims given their close relationship to the Section 10(b) and Rule 10b-5 claim. As such, once the federal claim is dismissed, if the Court chooses not to dismiss the State law claims on the merits, it should exercise its discretion and dismiss the related State law claims for lack of jurisdiction. *See* § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *Castiglione* v. *Papa*, No. 10-2491-cv, 2011 WL 1938666, at *3 (2d Cir. May 23, 2011) ("Having dismissed Castiglione's only federal law claims, the District Court should have declined to

exercise supplemental jurisdiction over her remaining state law claims."); *Powell* v. *Gardner*, 891 F.2d 1039, 1047 (2d Cir. 1989) ("[I]n light of the proper dismissal of the § 1983 claim against [the defendants], the district court should have declined to exercise pendent jurisdiction over [the plaintiff's] state-law claims . . . ."); *Bishop* v. *Greystone Props., LLC*, No. 08 Civ. 6759 (TPG), 2011 WL 1310767, at *5 (S.D.N.Y. Mar. 31, 2011) (Griesa, J.) (declining to exercise supplemental jurisdiction over state law tort claims following dismissal of 42 U.S.C. § 1983 claims); *Greenman-Perdesen, Inc.* v. *Berryman & Henigar, Inc.*, No. 09 Civ. 0167 (TPG), 2009 WL 2523887, at *8 (S.D.N.Y. Aug. 18, 2009) (Griesa, J.) (declining to exercise supplemental jurisdiction and stating that "[i]t is particularly appropriate for a court to decline jurisdiction when federal claims 'have dropped out of the lawsuit in its early stages and only state-law claims remain'").

## Conclusion

In light of the Supreme Court's decision in *Janus Capital Group, Inc.* v. *First Derivative Traders*, No. 09-525, 564 U.S. ___ (2011), the Second Amended Complaint should be dismissed with prejudice. For the same reason, the entry of judgment on the pleadings, under Rule 12(c), against plaintiffs and in favor of Paramount is fully warranted.

Dated: New York, New York
       July 5, 2011

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: _____
Leslie Gordon Fagen
Allan J. Arffa
Andrew J. Ehrlich
1285 Avenue of the Americas
New York, New York 10019
Tel:  (212) 373-3000
Fax:  (212) 757-3990
E-mail:  aarffa@paulweiss.com

KENDALL BRILL & KLIEGER LLP
Richard B. Kendall
Robert N. Klieger
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, California  90067
Tel:  (310) 556-2700
Fax: (310) 556-2705
E-mail:  rkendall@kbkfirm.com

Attorneys for Defendant Paramount Pictures Corporation