UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLIANZ RISK TRANSFER AG, MARATHON STRUCTURED FINANCE FUND, LP, NEWSTAR FINANCIAL, INC., and MUNICH RE CAPITAL MARKETS NEW YORK, INC.,<br><br>            Plaintiffs,<br><br>            v.<br><br>PARAMOUNT PICTURES CORPORATION,<br><br>            Defendant. | No. 1:08-CV-10420 (TPG) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION *IN LIMINE* NO. 4 TO EXCLUDE EVIDENCE OF ALLEGED ORAL
MISREPRESENTATIONS NOT PLEADED IN THE THIRD AMENDED COMPLAINT**

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Tel:  (212) 373-3000

– and –

KENDALL BRILL & KLIEGER LLP
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, CA 90067
Tel:  (310) 556-2700

*Attorneys for Defendant
Paramount Pictures Corporation*

## <u>Table of Contents</u>

**<u>Page(s)</u>**

Table of Authorities ...................................................................................................... ii

Preliminary Statement ................................................................................................. 1

Background .................................................................................................................. 3

Argument ..................................................................................................................... 5

    I.    Evidence of Oral Misrepresentations Should Be  Excluded Because the TAC Does Not Identify Them ............................................... 5

    II.    Plaintiffs Warranted That They Would Not Rely On Any Representations Outside Of The PPM ....................................................... 6

    III.    Plaintiffs' Testimony About Alleged Oral Misrepresentations Constitutes Inadmissible Hearsay ............................................... 8

Conclusion .................................................................................................................. 13

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)..................................................................................6, 8

*BHC Interim Funding, L.P.* v. *Finantra Capital, Inc.*,
   283 F. Supp. 2d 968 (S.D.N.Y. 2003) (Griesa, J.)....................................................6

*Crawford* v. *Franklin Credit Mgmt. Corp.*,
   261 F.R.D. 34 (S.D.N.Y. 2009) ................................................................................8

*Dongguk Univ.* v. *Yale Univ.*,
   270 F.R.D. 70 (D. Conn. 2010)................................................................................8

*Gertskis* v. *New York City Dep't of Health & Mental Hygiene*,
   2008 WL 4449285 (S.D.N.Y. Sept. 29, 2008) (Griesa, J.)........................................9

*Gilligan* v. *Town of Moreau*,
   234 F.3d 1261, 2000 WL 1608907 (2d Cir. Oct. 25, 2000)....................................10

*Greiner* v. *Wells*,
   417 F.3d 305 (2d Cir. 2005).....................................................................................9

*MacCallum* v. *New York Yankees P'ship*,
   2007 WL 2049720 (D. Conn. June 28, 2007)........................................................10

*One Commc'ns Corp.* v. *JP Morgan SBIC LLC*,
   381 F. App'x 75 (2d Cir. 2010) ...............................................................................7

*Wultz* v. *Bank of China Ltd.*,
   298 F.R.D. 91 (S.D.N.Y. 2014) ...............................................................................8

**Statutes**

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4(b).......................6

**Other Authorities**

Fed. R. Evid. 805 ...........................................................................................................9

Fed. R. Civ. P. 9(b) ....................................................................................................2, 6

Defendant Paramount Pictures Corporation ("Paramount") respectfully submits this memorandum of law in support of its motion *in limine* to preclude plaintiffs from introducing testimony or evidence at trial regarding alleged oral misrepresentations not pleaded in their Third Amended Complaint ("TAC").

## Preliminary Statement

This motion *in limine* seeks to exclude testimony and argument from plaintiffs about supposed oral misrepresentations that are nowhere pleaded in plaintiffs' operative complaint. Their complaint pleads exclusively alleged misrepresentations made in the Private Placement Memorandum ("PPM") relating to the securities plaintiffs' purchased, and the evidence at trial should not be permitted to stray beyond the scope of the complaint. Indeed, after this Court first dismissed the complaint in this action for lack of specificity, the plaintiffs focused their allegations on certain specific PPM provisions in order to survive a subsequent motion. Permitting such oral representations beyond the scope of the complaint to come into evidence would violate the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the transaction documents, and the rule against hearsay.

Plaintiffs in this action are all highly sophisticated institutions that purchased debt and equity issued by a special-purpose vehicle called Melrose Investors LLC ("Melrose"). Melrose, in turn, invested these funds in a slate of 25 films (the "Melrose Slate") that were produced and distributed by Paramount between 2004 and 2006. Pursuant to a revenue participation agreement ("RPA") between Paramount and Melrose, in exchange for the funds it provided to Paramount, Melrose (and ultimately its investors) obtained revenue participation interests in the films in the Melrose Slate.

Plaintiffs' pleading of allegedly false statements in the PPM concerning Paramount's use of certain "co-financing" or risk mitigation techniques, particularly "foreign

1

pre-sales," has not been substantiated by the evidence adduced in discovery. In an attempt to bolster their claims, however, a number of plaintiffs' witnesses have offered vague and inconsistent deposition testimony and submitted written declarations suggesting that they relied on *oral* representations *outside* the PPM. Plaintiffs have thus asserted that persons, generally not identified with any specificity, supposedly represented to plaintiffs that Paramount would continue to use the same financing and distribution practices (or, at times, just the same general "business practices") for the films in which Melrose was to invest as it had for films released during prior years.

Evidence of these supposed oral statements should be excluded for three independent reasons:

*First*, well-established law forbids the assertion of such alleged oral statements in a securities fraud case where, as here, those alleged misstatements are not pleaded in the complaint. Plaintiffs are barred by the PSLRA and Federal Rule of Civil Procedure 9(b) from pursuing at trial alleged misrepresentations that are not pleaded with specificity in their complaint. Plaintiffs have had every opportunity to address this pleading deficiency; they have amended their complaint three times over the course of this litigation—including following dismissal of their complaint for being too general. If plaintiffs were aware of misrepresentations by Paramount, they should have been pleaded then—not raised in trial testimony.

*Second*, in the contractual documents plaintiffs signed, they warranted that they would rely on nothing outside of the offering documents. Plaintiffs' contractual commitment not to rely on any such oral statements should bar their use at the trial in this matter.

*Third*, the statements are in all instances inadmissible hearsay, and in many instances double-hearsay. They are vague out-of-court statements that in many cases are not

even attributed to Paramount, but instead are attributed to Merrill Lynch ("Merrill"), the placement agent and underwriter for the securities.  The policy reasons underlying the hearsay rule have particular force here, where the out-of-court declarants in most instances cannot be compelled to attend the trial.  Introducing such hearsay statements—after the close of discovery, when the declarants cannot be examined in court about these alleged statements—would work significant unfairness to Paramount.

For all these reasons, Paramount seeks a ruling that the only evidence of alleged misstatements that plaintiffs can proffer at trial are those contained in the PPM relating to the securities at issue and specifically pleaded in plaintiffs' thrice-amended complaint.

## Background

The Melrose transaction, in which the plaintiffs, all substantial and highly sophisticated institutional investors who were advised by experienced counsel, was thoroughly documented.  Investors in Melrose were solicited by means of a PPM issued by Melrose and dated July 22, 2004.  The PPM warned investors that "[n]o person has been authorized to give any information or to make any representation other than that which is contained in this Memorandum, and if given or made, such information or representation must not be relied upon as having been authorized."  [Ex. 1 at iii.][1]

In addition to receiving the PPM, before purchasing notes or equity, each initial investor in Melrose was required to execute a subscription agreement (the "Subscription Agreement").  By executing the Subscription Agreement, Melrose investors warranted, among other things, that they were "not relying (for purposes of making any investment decision or otherwise) upon any advice, counsel or representations (whether written or oral) of any of the

---

[1]   Citations to ["Ex. __"] refer to the exhibits attached to the Omnibus Declaration of Patrick J. Somers, dated October 7, 2014.

Relevant Parties *other than the Private Placement Memorandum*."   [Ex. 2 ¶ 4(e) (emphasis added).]   "Relevant Parties" are defined in the Subscription Agreement to include Paramount, its parent company Viacom Inc., and Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill"), as well as each entity's "affiliates, or any of their respective officers, directors, trustees, shareholders, members, partners, employees, counsel, agents or representatives thereof."   [*Id*. at ¶ 4(c).]   Merrill, which is not a party to this action, served as the sole placement agent and underwriter for Melrose.   [*See* TAC ¶ 2; Ex. 1 at PPC_MelSlate0004654.]   In these roles, Merrill acted as the primary point of contact for all potential investors and marketed the investment to them.   [*See, e.g.,* TAC ¶¶ 75–76; Ex. 6; Ex. 7; Ex. 8; Ex. 10; Ex. 11; Ex. 12; Ex. 13; Ex. 15; Ex. 39 at 155:23–156:15, 164:23–165:18; Ex. 41 at 197:9–198:24; Ex. 42 at 100:9–17.]

Paramount's role with respect to the Melrose offering was limited to (1) entering into the RPA with Melrose, (2) providing to Merrill certain historical information about Paramount film performance, (3) providing certain information (including actual co-financing amounts achieved to date) with respect to the Melrose Slate to Merrill, and (4) attending a handful of due diligence meetings with some potential investors upon the investors' request. [*See* Ex. 3 at GSS0032922; Ex. 9 at PTFS00221833; Ex. 14 PTFS00227706–07; *see also* Ex. 34 ¶ 40; Ex. 35 ¶¶ 24–25.]

Some four years after their investments, plaintiffs filed this action, alleging that Melrose's PPM misrepresented Paramount's prospective use, in distributing the Melrose Slate, of certain co-financing techniques—specifically, "pre-sales" of films in foreign territories—as a means of reducing costs and minimizing the risk of loss on the films in the Slate.   All of the purported misrepresentations plaintiffs allege in the TAC were contained in the PPM.

For example, paragraph three of the TAC states: "Paramount induced Plaintiffs to purchase the Securities through disclosures *in the PPM* stating that Paramount regularly employed specific risk mitigation techniques when producing and distributing films . . . ." (emphasis added).  Paragraph five similarly alleges that "Paramount failed to disclose that by the time of Plaintiffs' purchase of the Securities, contrary to the specific and *repeated representations in the PPM* concerning its risk mitigation strategy, Paramount had materially altered its production and distribution plans with regard to the films in the Melrose Slate to dramatically reduce the use of a key risk mitigation technique *described in the PPM*."  (emphasis added).

The TAC then goes on to allege specific provisions of the PPM that discuss risk mitigation, which the TAC identifies as purportedly false and misleading.  [*E.g.*, TAC ¶¶ 29–32, 34.]  After identifying these PPM provisions, the TAC goes on to allege that "[a]s a result of Paramount's failure to disclose *in the PPM* that certain risk mitigation techniques were now disfavored . . . its disclosures *in the PPM* and its emphasis on the protections afforded by such risk mitigation techniques to be employed prospectively were materially false and misleading." [*Id.* ¶ 40 (emphasis added).]

Based on these alleged misrepresentations in the PPM (and only the PPM), plaintiffs assert claims for federal securities fraud, common law fraud and unjust enrichment.

<u>Argument</u>

I.   **Evidence of Oral Misrepresentations Should be Excluded Because the TAC Does Not Identify Them**

Both federal and state law require a plaintiff pleading a securities fraud claim to identify with specificity the alleged misrepresentations on which it sues.

Under Federal Rule of Civil Procedure 9(b) and the PSLRA, 15 U.S.C. § 78u–4(b), a complaint alleging fraud generally, and federal securities fraud in particular, must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007); *BHC Interim Funding, L.P.* v. *Finantra Capital, Inc.*, 283 F. Supp. 2d 968, 977-78 (S.D.N.Y. 2003) (Griesa, J.) (same).

Here, the only alleged misrepresentations specified in the TAC are ones contained in the PPM for the Melrose Slate.  [*See, e.g.,* TAC ¶¶ 30–33 (quoting and discussing statements in the PPM regarding "risk mitigation strategies"); *id.* ¶¶ 88–89 (quoting statements in the PPM regarding "Risk Factors").]  The TAC does not identify *any* misrepresentations outside of the PPM.  And in particular, it does not allege any oral misrepresentations.

Therefore, plaintiffs should not be permitted to introduce testimony or evidence at trial concerning any such statements.  Permitting such evidence or testimony would be highly prejudicial to Paramount.  Paramount is entitled to rely on the pleading as the scope of its potential liability at trial; that is the purpose of the PSLRA and the corresponding Federal Rules of Civil Procedure.  Plaintiffs should not be permitted to identify alleged misstatements "on the fly" without notice to Paramount.  This violates the letter and purpose of the pleading rules governing fraud claims, and the Court should so limit the scope of evidence and argument before plaintiffs' opening statement.

## II.    Plaintiffs Warranted That They Would Not Rely On Any Representations Outside Of The PPM

Plaintiffs also should not be permitted to introduce testimony or evidence concerning alleged oral misrepresentations, or any other statements outside of the PPM, because,

as a matter of law, they could not have reasonably relied on any such statements.  In binding contractual documents that they signed, they disclaimed reliance on any such statements.

Specifically, in the Subscription Agreement, by which Melrose investors, including plaintiffs, purchased the Melrose securities, plaintiffs warranted that they were "not relying (for purposes of making any investment decision or otherwise) upon any advice, counsel or representations (whether written or oral) of any of the Relevant Parties *other than the Private Placement Memorandum*."   [Ex. 2 ¶ 4(e)  (emphasis added).]    Notably, the Subscription Agreement defined "Relevant Parties" to include Paramount, Paramount's parent company, Viacom, and Merrill.  [*Id.* at ¶ 4(c).]  Furthermore, the PPM, by which investors in Melrose were solicited, warned: "No person has been authorized to give any information or to make any representation other than that which is contained in this Memorandum and, if given or made, such information or representation *must not be relied upon as having been authorized*."  [Ex. 1 at iii (emphasis added).]

In light of these plain disclaimers and disclosures, plaintiffs could not have reasonably relied upon any alleged representations, oral or otherwise, outside of the PPM.  *See, e.g., One Commc'ns Corp.* v. *JP Morgan SBIC LLC*, 381 F. App'x 75, 79 (2d Cir. 2010) (pre-agreement representations could not support securities fraud claim where agreement contained provision "specifically disclaiming the ability of [plaintiff] to rely on representations or warranties that were 'inconsistent with or in addition to the representations and warranties' set forth in the agreement"); *ATSI Commc'ns*, 493 F.3d at 105 (2d Cir. 2007) (securities fraud claims based on oral representations barred where transaction documents "plainly state[] that the only promises, restrictions, and warranties to the transaction were those set forth in the transaction

documents"). Thus, plaintiffs should not be permitted to introduce testimony or evidence suggesting otherwise.

As to plaintiff Allianz, there is yet another reason such testimony should not be introduced. Consistent with the foregoing disclaimers and disclosures, its corporate representative witness has already testified that he did *not* in fact rely on any statements outside of the PPM in deciding to invest in Melrose securities. [Ex. 40 at 56:3–15; 78:20–24.] As such, Allianz should be bound by that corporate representative testimony, and should not be permitted to take a different position at trial. *See Wultz* v. *Bank of China Ltd.*, 298 F.R.D. 91, 99 (S.D.N.Y. 2014) (since "[t]he testimony elicited at the Rule 30(b)(6) deposition represents the knowledge of the corporation, not of the individual deponents . . . [,] the corporation is obligated to prepare the designees so that they may give knowledgeable and *binding* answers for the corporation.") (emphasis added) (internal quotation marks and citations omitted); *Dongguk Univ.* v. *Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010) ("The testimony provided by a corporate representative at a 30(b)(6) deposition binds the corporation."); *Crawford* v. *Franklin Credit Mgmt. Corp.*, 261 F.R.D. 34, 38 (S.D.N.Y. 2009) (same).

III.    **Plaintiffs' Testimony About Alleged Oral Misrepresentations Constitutes Inadmissible Hearsay**

To the extent that plaintiffs have developed any evidence to date regarding alleged oral representations about financing of the Melrose slate, such evidence constitutes inadmissible hearsay, providing yet another reason for the Court to grant this motion.

Much of this evidence comes from the mouth of Harris Maslansky, an independent consultant hired by plaintiffs Allianz and Munich Re to provide advice about the Melrose transaction. When asked at his deposition whether Paramount "commit[ted] to any particular level of co-financing," he responded: "I think what Paramount committed to was that

they would continue dealing in the international marketplace the way they had dealt in the past. *I don't recall whether I heard it from Moody's[2] or whether I heard it from Jen[nifer Hanf of plaintiff Munich Re], but I believe that Paramount . . . had said they are going to continue doing business the way they had done business.*"  [Ex. 44 at 55:21–56:10 (emphasis added).]  Such testimony about what plaintiffs may have heard from someone who may have heard it from Paramount is "unsubstantiated, double-hearsay," which simply cannot substantiate plaintiffs' claims.  *See Gertskis* v. *New York City Dep't of Health & Mental Hygiene*, 2008 WL 4449285, at *1 (S.D.N.Y. Sept. 29, 2008) (Griesa, J.).

In order for double-hearsay, or "hearsay within hearsay," to be admissible, each part of the combined statements must conform with an exception to the hearsay rule.  *See* Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."); *see also Greiner* v. *Wells*, 417 F.3d 305, 325 (2d Cir. 2005) (lower court "correctly placed no reliance on the double-hearsay statement" where neither level of hearsay fit hearsay exception).  As the Second Circuit has aptly explained:

> The testimony of witnesses as to what the witness heard a party say is admissible as a party admission. The testimony of witnesses as to what someone else told them a party said is inadmissible double hearsay. The fact that it is a party who repeats the hearsay does not render the statement a party admission.

*Gilligan* v. *Town of Moreau*, 234 F.3d 1261, 2000 WL 1608907, at *3 n.4 (2d Cir. Oct. 25, 2000) (summary order); *accord MacCallum* v. *New York Yankees P'ship*, 2007 WL 2049720, at *2 (D. Conn. June 28, 2007) (granting motion to exclude "an out of court statement repeating an additional out of court statement [by defendant] offered for the truth of the matter asserted").

---

[2]    Moody's is a non-party to this action, which rated the Melrose securities.  [TAC ¶ 78.]

The same is true here.  Testimony by Mr. Maslansky about what Moody's or Ms. Hanf told him that someone from Paramount may have told them is inadmissible double-hearsay.

With respect to the level of co-financing that Paramount would employ for films in the Melrose Slate, Maslansky further testified that Paramount "maintained that they were going to do business in a similar fashion that they had done business."  [Ex. 44 at 32:8–21.] However, when asked who relayed any such information to him, Maslansky responded that he spoke to Peter Hoffman of Merrill, who presumably had heard it from Paramount.  [*Id.* at 32:3–34:4.]  Such testimony is also inadmissible double-hearsay.

Plaintiff Marathon Asset Management offered similarly inadmissible hearsay testimony.  For example, Andrew Springer, its corporate representative, initially testified vaguely that someone misrepresented to him that under Chairman Jonathan Dolgen, Paramount "had run an extremely fiscally responsible platform where they were seeking to reduce their exposure and use various risk mitigation techniques that they had used in the slate from 1998 to 2003 and that they were going to continue those business practices."  [Ex. 37 at 103:16–104:6.]  When asked to specify who made this representation to him, Springer responded vaguely: "everybody who I dealt with on the transaction, on the Paramount side."  [*Id.* at 105:20–106:4.]  When pressed further to specify who, exactly, made these statements, Springer first identified Merrill Lynch: "Certainly it was an important topic when I spoke with Peter Hoffman and the team at Merrill Lynch."  [*Id.* at 106:5–14.]

NewStar offered testimony about vague alleged oral representations by Merrill that likewise should not be admitted.  When asked whether he recalled "discussing with Merrill the mix of risk mitigation techniques that were employed by Paramount," Thomas Calhoun, former employee of plaintiff NewStar who worked on the Melrose transaction, testified: "Yes,

but . . . I just don't recall.  I mean I can tell you that . . . without question that that would have been discussed.  We would have looked at that . . ., but I don't recall the discussions themselves."  [Ex. 43 at 56:9–24; *see also id.* at 53:5–55:22 (same).]   Because any such statements by Merrill to the plaintiffs were out-of-court statements by a non-party to this action, which plaintiffs would clearly be offering as evidence against *Paramount* regarding the financing of the Melrose slate, they should be precluded in their entirety.

Other witnesses for plaintiffs have offered testimony about supposed oral representations heard from their colleagues, who in turn supposedly heard the alleged misrepresentations from Paramount.  These should similarly be excluded as double-hearsay.  For example, Neil Hohmann, corporate representative of plaintiff Munich Re, testified at his deposition that he had no firsthand knowledge of alleged misrepresentations by Paramount to Munich Re regarding "the sale of the international rights" for the Melrose Slate.  [Ex. 38 at 26:15–28:2.]   Mr. Hohmann also testified that he personally did not speak with anyone at Paramount concerning the Melrose transaction prior to Munich Re's investment.  [*Id.* at 49:21–50:2.]   Nor did he have any recollection of meeting or speaking with anyone associated with Merrill during the course of Munich Re's due diligence for the Melrose transaction  [*Id.* at 48:16–49:17.]   However, Mr. Hohmann later testified that his former colleague Jennifer Hanf, who worked with him on the Melrose transaction, represented to him that "through her conversations with Paramount, and based on the data [concerning a historical slate of films previously released by Paramount] we were given by Paramount, that [Paramount] w[as] representing that this [data] would be reflective of . . . future business."  [*Id.* at 70:5–20.]   And in a subsequent written declaration, Mr. Hohmann vaguely described a "due diligence meeting with Paramount executives" as a result of which Munich Re was "made to understand that Paramount

was continuing its risk averse business strategy for the films to be included in the Melrose Slate."
[Ex. 34 ¶ 40.]   Given his deposition testimony that he personally participated in no such
meetings, anything said at these meetings must have been relayed to him by someone else, and
thus constitutes inadmissible double-hearsay.

    Joseph Flynn, corporate representative of plaintiff Allianz, similarly attempted to
rely on hearsay statements supposedly heard by one of his colleagues.   Mr. Flynn testified during
his deposition that he did not have any direct communications with Paramount before Allianz
invested in the Melrose Slate, and that he did not know whether any alleged representations to
Allianz regarding foreign pre-sales were communicated by Paramount or by Merrill.   [Ex. 40 at
41:12–16, 43:11–44:12.]   However, in a subsequent written declaration, Mr. Flynn described a
meeting with Paramount attended by one of his Allianz colleagues—but not by Mr. Flynn—at
which Paramount executives purportedly "expressed optimism" contributing to Allianz's belief
that Paramount would "control costs."   [Ex. 35 ¶¶ 24–25.]   Setting aside that the supposed
representation consists of an entirely vague statement that does not in fact contradict the PPM,
such a statement is also inadmissible double-hearsay.

## Conclusion

For the reasons set forth above, Paramount respectfully requests that the Court grant its motion to preclude plaintiffs from introducing any evidence or testimony regarding alleged oral misrepresentations not pleaded in the TAC.

Dated:   October 7, 2014
             New York, New York

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By: s/Allan J. Arffa

Allan J. Arffa (arffa@paulweiss.com)
Andrew J. Ehrlich (aehrlich@paulweiss.com)
Patrick J. Somers (psomers@paulweiss.com)
1285 Avenue of the Americas
New York, New York 10019
Tel: (212) 373-3000
Fax: (212) 757-3990

KENDALL BRILL & KLIEGER LLP
Richard B. Kendall (rkendall@kbkfirm.com)
Philip M. Kelly (pkelly@kbkfirm.com)
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, California  90067
Tel:  (310) 556-2700
Fax: (310) 556-2705

*Attorneys for Defendant Paramount Pictures
Corporation*