UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLIANZ RISK TRANSFER AG, MARATHON STRUCTURED FINANCE FUND, LP, NEWSTAR FINANCIAL, INC., and MUNICH RE CAPITAL MARKETS NEW YORK, INC.,<br><br>                    Plaintiffs,<br><br>              v.<br><br>PARAMOUNT PICTURES CORPORATION,<br><br>                    Defendant. | No. 1:08-CV-10420 (TPG) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PARAMOUNT PICTURES CORPORATION'S MOTION *IN LIMINE* NO. 3 TO EXCLUDE EVIDENCE AND TESTIMONY CONCERNING ALLEGATIONS <u>MADE IN A SEPARATE CALIFORNIA LAWSUIT</u>**

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Tel:  (212) 373-3000

– and –

KENDALL BRILL & KLIEGER LLP
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, CA 90067
Tel:  (310) 556-2700

*Attorneys for Defendant*
*Paramount Pictures Corporation*

**Table of Contents**

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................... 1

I.     FACTUAL BACKGROUND .................................................................................. 4

       A.     The Melrose 2 Action ................................................................................. 4

       B.     Plaintiffs Serve "Supplemental" Expert Spreadsheets Seeking Melrose 2
              Damages, Even Though Plaintiffs' Expert Never Identified Such Damages
              In His Initial Report ................................................................................... 5

       C.     Plaintiffs' Expert Uses The Melrose 2 Allegations To Claim Unwarranted
              Damages In This Action ............................................................................. 8

II.    ARGUMENT .......................................................................................................... 10

       A.     Allegations Are Not A Reliable Basis For Expert Testimony ............................ 10

       B.     The Melrose 2 Allegations Cannot Support A Claim For Damages By
              These Plaintiffs ........................................................................................... 14

              1.     The Alleged Contract Reporting Claims Were Not Proximately
                     Caused By, And Not Foreseeable Harm Resulting From, The
                     Alleged Misrepresentations About Risk Mitigation ................................ 14

              2.     Plaintiffs, In Any Event, Do Not Have Standing To Assert
                     Contract Reporting Claims Against Paramount On Behalf of The
                     Melrose Entity ..................................................................................... 17

       C.     Plaintiffs Are Precluded As A Matter of Law From Introducing A New
              Damages Theory In A Supplemental Expert Report ............................................ 19

       D.     The Melrose 2 Allegations Should Be Excluded Under F.R.E. 403 ................... 21

III.   CONCLUSION ....................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*60223 Trust* v. *Goldman, Sachs & Co.*,
    540 F. Supp. 2d 449 (S.D.N.Y. 2007) (Griesa, J.)..................................................16

*Amorgianos* v. *Nat'l R.R. Passenger Corp.*,
    303 F.3d 256 (2d Cir. 2002)..................................................12

*In re Apple REITs Litig.*,
    2013 WL 1386202 (E.D.N.Y. Apr. 3, 2013) ..................................................17

*Bartfield* v. *Murphy*,
    578 F. Supp. 2d 638 (S.D.N.Y. 2008)..................................................18, 19

*Bragdon* v. *Abbott*,
    524 U.S. 624 (1998)..................................................11

*Castellano* v. *Young & Rubicam, Inc.*,
    257 F.3d 171 (2d Cir. 2001)..................................................17

*Cathay Pac. Airways, Ltd.* v. *Fly & See Travel, Inc.*,
    3 F. Supp. 2d 443 (S.D.N.Y. 1998) ..................................................16

*In re Complaint of Kreta Shipping, S.A.*,
    181 F.R.D. 273 (S.D.N.Y. 1998) ..................................................21

*Cont'l Cas. Co.* v. *PricewaterhouseCoopers, LLP*,
    15 N.Y.3d 264 (2010)..................................................19

*Daubert* v. *Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993)..................................................2, 11, 12

*Design Strategy, Inc.* v. *Davis*,
    469 F.3d 284 (2d Cir. 2006)..................................................6

*Emergent Capital Inv. Mgmt., LLC* v. *Stonepath Group, Inc.*,
    343 F.3d 189 (2d Cir. 2003)..................................................16

*First Nationwide Bank* v. *Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir. 1994)..................................................16

*Greentech Research LLC* v. *Wissman*,
    104 A.D.3d 540 (1st Dep't 2013) ..................................................17

**Page(s)**

*Howe* v. *Bank of New York Mellon,*
    783 F. Supp. 2d 466 (S.D.N.Y. 2011) ....................................................................18

*King* v. *City of New York,*
    2007 WL 959696 (E.D.N.Y. Mar. 30, 2007) ....................................................12

*Koch* v. *Pechota,*
    2013 WL 4834131 (S.D.N.Y. Sept. 9, 2013) ....................................................15

*Kumho Tire Co.* v. *Carmichael,*
    526 U.S. 137 (1999) ....................................................................11

*Laub* v. *Faessel,*
    297 A.D.2d 28 (1st Dep't 2002) ....................................................16

*Lentell* v. *Merrill Lynch & Co.,*
    396 F.3d 161 (2d Cir. 2005) ....................................................2, 16

*Luke* v. *Family Care & Urgent Med. Clinics,*
    323 F. App'x 496 (9th Cir. 2009) ....................................................20

*Malletier* v. *Dooney & Bourke, Inc.,*
    525 F. Supp. 2d 558 (S.D.N.Y. 2007) ....................................................11, 22

*Melrose Investors 2 LP* v. *Paramount Pictures Corporation & DW Studios L.L.C.,*
    No. BC474310 (Superior Court of California, Los Angeles County) ............................ *passim*

*In re Oracle Corp. Sec. Litig.,*
    2009 WL 1709050 (N.D. Cal. June 19, 2009) ....................................................19

*Patterson* v. *Balsamico,*
    440 F.3d 104 (2d Cir. 2006) ....................................................21, 22

*In re Pfizer Sec. Litig.,*
    2014 WL 3291230 (S.D.N.Y. July 8, 2014) ....................................................20

*Sandata Techs., Inc.* v. *Infocrossing, Inc.,*
    2007 WL 4157163 (S.D.N.Y. Nov. 16, 2007) ....................................................20

*Sandata Techs., Inc.* v. *Infocrossing, Inc.,*
    69 Fed. R. Serv. 3d 776 at *3-4 (S.D.N.Y. 2007) ....................................................4

*Softel, Inc.* v. *Dragon Med. & Scientific Comm., Inc.,*
    118 F.3d 955, 961 (2d Cir. 1997) ....................................................21

*Suez Equity Investors, L.P.* v. *Toronto–Dominion Bank,*
    250 F.3d 87, 95 (2d Cir. 2001) ....................................................2

**Page(s)**

## STATUTES

Section 10(b) of the Securities Exchange Act ...................................................................15

## OTHER AUTHORITIES

Fed. R. Civ. P. 26 ..............................................................................................................6

Fed. R. Civ. P. 26(a) ...........................................................................................1, 6, 20, 21

Fed. R. Civ. P. 26(a)(2)(B) ..............................................................................................19

Fed. R. Civ. P. 26(e) ..................................................................................................1, 20

Fed. R. Civ. P. 37(c)(1)...................................................................................1, 20, 21, 22

Fed. R. Evid. 402 .......................................................................................................1, 15

Fed. R. Evid. 403 ....................................................................................................1, 4, 22

Fed. R. Evid. 702 ...............................................................................................1, 2, 11, 12

Fed. R. Evid. 703 .................................................................................................1, 2, 11

Defendant Paramount Pictures Corporation ("Paramount") respectfully submits this motion *in limine* to preclude all evidence, testimony, and argument concerning a separate California lawsuit, captioned *Melrose Investors 2 LP* v. *Paramount Pictures Corporation and DW Studios L.L.C.*, No. BC474310 (Superior Court of California, Los Angeles County) (the "Melrose 2 Action").  The motion is made pursuant to Federal Rules of Evidence 402, 403, 702, and 703, as well as pursuant to Federal Rules of Civil Procedure 26(a) and (e) and 37(c)(1).

## INTRODUCTION

Plaintiffs Allianz Risk Transfer AG, Marathon Structured Finance Fund, LP, NewStar Financial Inc., and Munich Re Capital Markets New York, Inc. (collectively "plaintiffs") hope to introduce at trial a theory of damages that has no causal connection to the fraud alleged in plaintiffs' Third Amended Complaint ("TAC"), and as to which there is no reliable factual basis whatsoever.  Plaintiffs' damages expert assumed that certain unverified and unproven allegations made in an unrelated California lawsuit against Paramount were true.  The expert then "corrected" Paramount's financial reporting, based on nothing more than reading the unverified complaint in the California lawsuit.  The expert then added the amount he had derived from his speculations about the California lawsuit to his estimate of plaintiffs' damages here. Expert testimony given on this basis is irrelevant, unreliable, and clearly inadmissible, and the Court should exclude it.

The California lawsuit (the Melrose 2 Action) was filed in 2011 and was settled in 2013, without any admission or judicial finding of wrongdoing by Paramount.  The Melrose 2 Action did not concern the liability theory set forth by these plaintiffs in this case.  Instead, it was a California-law contract action, brought by an entirely different entity under the terms of an entirely separate contract.  The plaintiffs here were not parties to the Melrose 2 Action. Nonetheless, plaintiffs' damages expert has relied upon nothing more than the bare allegations in

the Melrose 2 complaint, in a series of supposedly "supplemental" expert reports, to unfairly and improperly enlarge his estimate of plaintiffs' damages by millions of dollars.

The Court should exclude plaintiffs' expert's testimony and evidence related to the Melrose 2 allegations for at least five separate, equally dispositive reasons:

*First*, unverified allegations in a state-court complaint are not, to put it mildly, a reliable basis for expert testimony. Plaintiffs' expert should not be allowed to "correct" Paramount's financial reports to produce additional damages for the plaintiffs based on nothing more than his assumptions about an unverified complaint and his speculation about the effect of those allegations. Plaintiffs' expert has admitted, repeatedly, that neither he nor anyone else working on plaintiffs' behalf did *anything* whatsoever to verify the truth of the allegations in the unverified state-court Melrose 2 complaint. Expert opinion must be based on fact, and pure speculation about unverified allegations should therefore, as a matter of law, be excluded under Federal Rules of Evidence 702 and 703. *See Daubert* v. *Merrell Dow Pharm., Inc.,* 509 U.S. 579, 590 (1993) (to be admissible, expert testimony must be based upon "more than subjective belief or unsupported speculation. . . . Proposed testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known").

*Second*, damages in this Section 10b-5 and state-law fraud action, as a matter of law, require plaintiffs to prove "loss causation," which in turn requires a showing "that the *subject* of the fraudulent statement or omission was the *cause* of the actual loss suffered." *Lentell* v. *Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005) (quoting *Suez Equity Investors, L.P.* v. *Toronto–Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001) (emphasis added)). The expert's calculations based upon the Melrose 2 allegations do not meet this standard. The plaintiffs' theory of liability in this action is that Paramount misrepresented its (alleged)

intentions concerning what plaintiffs allege were risk-reducing "foreign pre-sales" for films in which Melrose (the entity to which plaintiffs made high risk loans and, in the case of two plaintiffs, in which they purchased limited liability company shares) invested.  There is no relation between this "foreign pre-sale" theory and the claims in the Melrose 2 Action.  The plaintiffs' damages, if any, can only be legally based on the alleged misrepresentations they have put at issue (specifically relating to alleged plans to engage in foreign pre-sales), not unrelated claims from a separate lawsuit brought by different parties that are not part of plaintiffs' theory of liability.

*Third*,  plaintiffs do not have any standing to bring claims on behalf of Melrose against Paramount on the basis that Paramount improperly paid Melrose under the Melrose-Paramount contract.  Any alleged harm suffered by a failure of Paramount to report correctly to Melrose would be harm to the Melrose entity itself, not to these plaintiffs who only loaned money to or purchased limited liability company shares in Melrose, and these plaintiffs lack standing to sue for such harm.  Thus, plaintiffs lack standing to obtain damages based upon the allegations of the Melrose 2 complaint.

*Fourth*, plaintiffs' use of the Melrose 2 allegations is independently barred under the Federal Rules of Civil Procedure, because plaintiffs' expert introduced these calculations only in a last minute, purportedly "supplemental" expert report, in clear violation of the rules governing disclosure of expert testimony.  Plaintiffs' damages expert did not mention the Melrose 2 allegations in his initial expert report, nor did he calculate any damages based upon those allegations when he served his report.  Only after Paramount's rebuttal expert demonstrated that plaintiffs' damages expert's report was fundamentally flawed, and that plaintiffs were entitled to no damages or minimal damages, did plaintiffs submit purportedly

"supplemental" spreadsheets and reports concerning the Melrose 2 allegations.  Plaintiffs' expert admitted openly that he could have relied upon the Melrose 2 allegations in his original report, but did not do so.  This was improper.  *See Sandata Techs., Inc.* v. *Infocrossing, Inc.*, 69 Fed. R. Serv. 3d 776 at \*3-4 (S.D.N.Y. 2007) ("When the expert supplements her report by addressing a new matter after discovery has ended, the very purpose of the rule [governing expert discovery] is nullified.").

*Fifth*, the Melrose 2 allegations should be excluded under Federal Rule of Evidence 403.  Forcing Paramount to respond to unfounded allegations from a different case which has nothing to do with plaintiffs' liability theory would be extremely prejudicial to Paramount and not probative whatsoever, and would require a min-trial on the Melrose 2 allegations that would unnecessarily prolong this trial.

## I.      FACTUAL BACKGROUND

### A.      The Melrose 2 Action

In November, 2011, plaintiff Melrose 2 Investors L.P. ("Melrose 2") filed the Melrose 2 Action in the Superior Court, State of California, County of Los Angeles.  [Ex. 29][1]. A First Amended Complaint was filed on October 4, 2012.  [Ex. 30]  The case was entirely settled subject to a confidential settlement agreement, without any admission of liability whatsoever by Paramount, and was dismissed on the basis of that settlement in early 2013.  [Ex. 32]  At no time during the Melrose 2 Action was there any judicial determination whatsoever as to the accuracy of the allegations in the Melrose 2 Action; Paramount answered and denied the allegations of the Complaint and vigorously pursued its defense of the matter until settlement. [Ex. 31]

---

[1]   Citations to ["Ex. __"] refer to the exhibits attached to the Omnibus Declaration of Patrick J. Somers, dated October 7, 2014.

The Melrose 2 Action was brought by Melrose 2, a special-purpose entity that invested in a slate of Paramount films through a Motion Picture Investment Agreement ("Melrose 2 Contract").  Melrose 2 was and is an entirely different entity than "Melrose", the investment vehicle relevant to this action, in which the plaintiffs here invested.  [Ex. 4]

In its Complaint and First Amended Complaint in the Melrose 2 Action, Melrose 2's primary claim was for an alleged breach of the contract that governed the parties' relationship in the case (the Melrose 2 Contract).  The Melrose 2 Contract was an entirely different contract, with different terms, than the "Revenue Participation Agreement" ("RPA") between Melrose and Paramount that is relevant to this action.  The action was based on Paramount's alleged failure to *report* to *Melrose 2* properly for costs and revenues as those terms were described in the Melrose 2 Contract in connection with the films in which Melrose 2 invested.  [Ex. 29; Ex. 30.]  Although Melrose 2 also alleged fraud and unfair competition claims, those tort claims were based upon purported violations of contractual reporting obligations under the Melrose 2 Contract.  [Ex. 29; Ex. 30.]

No allegation in the Melrose 2 Action concerned foreign pre-sales or risk mitigation.  [Ex. 29; Ex. 30.]  No allegation in the Melrose 2 Action concerned the purported change of strategy as to risk mitigation and foreign pre-sales on the part of Paramount that plaintiffs have put at issue in this case, or, indeed, any claim of fraud in the inducement for a purchase of securities.  [Ex. 29; Ex. 30.]  Nor did any allegation in the Melrose 2 Action concern these plaintiffs or any contract under which these plaintiffs held rights. [Ex. 29; Ex. 30.]

**B.      Plaintiffs Serve "Supplemental" Expert Spreadsheets Seeking Melrose 2 Damages, Even Though Plaintiffs' Expert Never Identified Such Damages In His Initial Report**

Throughout fact discovery, the plaintiffs here never sought substantive information concerning the truth or falsity of Melrose 2 allegations.  The plaintiffs were

indisputably aware of the Melrose 2 allegations early in the discovery process.  In fact, in June

2013,  plaintiffs' counsel, James Janowitz questioned Paramount witnesses about the Melrose 2

Action.  [Ex. 36]  Despite knowing about the Melrose 2 Action, plaintiffs did not pursue further

discovery on the issue, and never suggested anywhere that they were seeking damages based on

alleged contract reporting claims – not in any version of their Complaint, not in their Rule 26

disclosures, not in discovery, and not in plaintiffs' initial damages report.  Plaintiffs were

obligated to provide their damages theory to Paramount during fact discovery under Federal Rule

of Civil Procedure 26(a).  *See Design Strategy, Inc.* v. *Davis*, 469 F.3d 284, 295 (2d Cir. 2006).

However, plaintiffs never did so, and so Paramount was never aware during fact discovery that

plaintiffs intended to address Melrose 2-related issues at all.

Paramount first became aware of plaintiffs' intent to use the Melrose 2 allegations

as a component of their damages only when, after filing his original expert report and receiving a

rebuttal report from Paramount, plaintiffs' damages expert, Phillip Fier ("Fier") included

calculations based upon the Melrose 2 allegations in purportedly "supplemental" spreadsheets.

Plaintiffs' reliance on the Melrose 2 allegations is thus an apparent  "Hail Mary" attempt to

enlarge their damages claim, after Paramount pointed out fatal flaws in plaintiffs' initial damages

analysis.

In Fier's original expert report, Fier created  a "but for" scenario to demonstrate

the damages which, according to Fier, plaintiffs would be entitled to recover had Paramount

engaged in the amounts of "foreign pre-sales" that plaintiffs allege Paramount falsely indicated it

would engage in at the time of plaintiffs' initial investment.  Fier then compared his "but for"

scenario to an "actual" scenario and concluded that, had Paramount entered into the "but-for"

foreign pre-sales that plaintiffs claim Paramount should have entered into, plaintiffs would have

received approximately $17 million in damages.  To arrive at this number, Fier made several entirely unwarranted assumptions that were identified by Paramount's rebuttal expert, and that are discussed in other pre-trial briefing filed by Paramount.  Among other errors, Fier failed to address the contractual requirement that any funds not invested by Melrose in the 25 films that actually constituted the Melrose Slate of films would  have to be invested  in other Paramount films, reducing (under the plain terms of the relevant contract, which Fier acknowledged to be correct) plaintiffs' available damages from approximately $17 million to approximately $1 million.  Once all these clearly erroneous assumptions in Fier's original report were corrected, plaintiffs' alleged damages become minimal or are eliminated altogether.

In response, Fier, on the eve of his deposition in June, 2014, prepared four new reports that contain purportedly "supplemental" (in fact, entirely new) damages calculations. These new calculations included, for the first time, an analysis purportedly based upon the Melrose 2 allegations.  Subsequently, in September 2014, Fier served another purportedly "supplemental" expert report, and attached a spreadsheet that again included damages purportedly based on the Melrose 2 allegations.  In both the June and September "supplemental" reports, Fier included substantial damages claims based on the unverified and unproven allegations in the Melrose 2 complaint.  Although he admits to having no knowledge of the truth of the allegations made by Melrose 2 and having done nothing to investigate or analyze the claims, he now accepts the contract reporting errors that are alleged to breach the Melrose 2 Contract and assumes that the same errors were made on Melrose films and that such errors similarly breach the wholly-unrelated Melrose agreement.

Fier also openly admitted in his deposition that he could have incorporated precisely these same Melrose 2 calculations in his original expert report, but chose not to do so.

[Ex. 46 at 106:2-107:2 ("Q: If the Melrose 2 complaint … was available before you issued your report, you could have included the arguments that you've subsequently included regarding Melrose 2? …. A: Yes, I could have … I could have done that."); 110:24-111:1 ("Q: This information was available to you at the time you issued your original report? A: Yes").]

### C. Plaintiffs' Expert Uses The Melrose 2 Allegations To Claim Unwarranted Damages In This Action

Fier used the Melrose 2 allegations in his supplemental reports to increase plaintiffs' damages.  He did so even though plaintiffs' complaint in this action makes no reference to the Melrose 2 allegations, and even though the Melrose 2 allegations are entirely unrelated to the purported representations as to risk mitigation and foreign pre-sales at issue in this case.

Fier first assumed that certain of the allegations in the Melrose 2 complaint were correct and applicable to films invested in by these plaintiffs.  [Ex. 19; Ex. 20; Ex. 21; Ex. 22; Ex. 23; Ex. 24; Ex. 27; Ex. 46 at 102:1-15, 115:20-116:15, 231:23-232:9, 354:2-6).]  Then, based on further assumptions about the financial effect of those allegations (again, based on nothing more than the Melrose 2 complaint), Fier used Paramount's financial statements  and adjusted those statements to derive a hypothetical amount that Paramount would have had to pay Melrose, and which ultimately Melrose would have paid to plaintiffs as noteholders and LLC members, had these allegations in the Melrose 2 complaint proven true.  Finally, Fier added in this adjusted amount to plaintiffs' total claim of "damages."

Fier admitted unequivocally that he had done *nothing* to verify the accuracy of the statements in the Melrose 2 complaint.  [Ex. 46 at 354:2-6 ("Q: Have you done *anything* to assess the validity of the allegations contained in the Melrose 2 complaint? A: *No.  I was unable to because I don't have the information available to be able to do it.*") (emphasis added).]

More specifically, Fier focused on two allegations in the Melrose 2 complaint, "affiliate payments" and a "French Pay TV fee." Fier accepted as true allegations in the Melrose 2 complaint that Paramount – as a contractual matter – was required to avoid deducting payments to affiliated companies ("affiliate payments"). Fier assumed that the allegations in the Melrose 2 complaint about affiliate payments were equally applicable to the plaintiffs in this action and the films in which Melrose invested. As shown below, this was an entirely false assumption, because the Melrose 2 Action concerned specific contractual language about corporate affiliates that is missing here.

Fier then adjusted his "but for" model to charge Paramount with "damages" based on that mistaken assumption. [Ex. 19; Ex. 20; Ex. 21; Ex. 22; Ex. 23; Ex. 24; Ex. 27.] Fier admitted he had done no further analysis of these affiliate payments, and had simply assumed on the basis of the Melrose 2 complaint that he was entitled to bolster plaintiffs' damages by allocating affiliate payments to the plaintiffs here. [Ex. 46 at 110:10-23.] In addition, Fier accepted as true and applicable to the plaintiffs a Melrose 2 allegation that Paramount should have allocated (some unspecified portion of) a French pay television marketing fee to receipts of Melrose 2 films. Although this Melrose 2 allegation was based upon the distinct Melrose 2 Contract, and Fier was unaware of any detail about what this payment was, what films it related to, or how it was to be allocated, Fier allocated the entirety of this French pay television marketing fee ("French Pay TV fee"), for certain years, to the plaintiffs in this action. [Ex. 46. 310:13-312:23.] Fier admitted that he had done nothing, other than reading the Melrose 2 complaint, to ascertain whether or how much of the French Pay TV fee should have been paid to the plaintiffs in this action.

Fier ultimately concluded that if he "corrected" Paramount's financial statements based on the Melrose 2 allegations about affiliate payments and the French TV marketing fee, the total effect for the 25 films in which the plaintiffs here invested was an increase in plaintiffs' purported damages of more than $3 million.  [Ex. 26.]

Fier also used the Melrose 2 allegations in a different, equally untenable way – namely, to counteract the devastating effect of his original failure to understand the importance of the parties' contract.  As explained above, Fier failed to note, in his original analysis, a critical contractual provision which would have required plaintiffs, had Fier's "but for" world in fact come to pass, to invest in 12 additional Paramount films.  Correcting for this one error removes most of plaintiffs' claimed damages.  In the "supplemental" reports Fier served in June, 2014 (though not in the purportedly "supplemental" report he served in September, 2014), Fier adjusted both the production costs and net receipts of these 12 additional films based solely upon his understanding of the Melrose 2 allegations.  [Ex. 22; Ex. 23.]  In these scenarios, the total amount of adjustments Fier made to plaintiffs' purported damages here totaled approximately $9 million.  *Id.*  Once again, Fier admitted that he did nothing whatsoever to independently verify the accuracy of the Melrose assumptions upon which these adjustments were based or their applicability to these plaintiffs here.  [Ex. 46 at 354:2-6.]

## II.    ARGUMENT

### A.    Allegations Are Not A Reliable Basis For Expert Testimony

"District courts are tasked with the 'special obligation' of serving as the 'gatekeepers' of expert evidence, and must therefore decide which experts may testify and present evidence before the jury.  Recognizing that a purported expert's opinion often carries special weight with the jury even when unwarranted, the Supreme Court has directed district courts to 'ensure that any and all [expert] testimony or evidence admitted is not only relevant,

but reliable.'" *Malletier* v. *Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 561-62 (S.D.N.Y.

2007) (quoting *Daubert*, 509 U.S. 579 at 588); *Kumho Tire Co.* v. *Carmichael*, 526 U.S. 137,

141-42 (1999).  Here, regardless of the loss causation and standing issues, Fier clearly should not

be permitted to rely upon the mere allegations in the Melrose 2 complaint as a basis for expert

testimony on damages.

Under Federal Rule of Evidence 702, an expert's testimony must be "based on

sufficient *facts or data*" and be "the product of reliable principles and methods."  Fed. R. Evid.

702 (emphasis added).  Under Federal Rule of Evidence 703, expert testimony must be based on

"*facts or data* in the case that the expert has been made aware of or personally observed";

moreover, such facts or data must be admissible evidence unless they the specific kind of "*facts

or data*" upon which an expert would reasonably rely.  Fed. R. Evid. 703 (emphasis added).

Under these standards, the trial judge must ensure that the expert's opinion is based upon "more

than subjective belief or unsupported speculation. . . . Proposed testimony must be supported by

appropriate validation—*i.e.*, 'good grounds,' based on what is known." *Daubert*, 509 U.S. at

590.  Expert testimony is only reliable where it has "a traceable, analytical basis in objective

fact . . ." *Bragdon* v. *Abbott*, 524 U.S. 624, 653 (1998).  "[W]hen an expert opinion is based on

data, a methodology, or studies that are simply inadequate to support the conclusions reached,

*Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony" and "[t]o

warrant admissibility . . .  it is critical that an expert's analysis be reliable at every step."

*Amorgianos* v. *Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266-67 (2d Cir. 2002).

The minimum requirement of these standards is that expert testimony be reliably

based upon "fact."  Here, that minimum requirement is not met.  Unverified allegations like

those in the Melrose 2 complaint are not facts, and are not evidence of any kind.  *E.g., King* v.

*City of New York*, 2007 WL 959696, at *11 (E.D.N.Y. Mar. 30, 2007) ("allegations are not

evidence").  Nor did Fier do anything to verify them here.  Nor, finally, are such unproven

allegations regularly relied upon by experts.  Yet Fier clearly and unequivocally admitted that he

was relying, for his analysis, exclusively upon the allegations in the Melrose 2 complaint were

true and his unjustified assumption that those allegations applied directly to the plaintiffs here:

> Q: Eventually, however, *you did include the Melrose 2 allegations in
> your – in your analysis*; is that correct? . . .
>
> A: *Yes, that's correct*.  One --
>
> Q: Why did you do that? . . .
>
> A: Once Mr. Wunderlich's report included the Melrose 2 films, then I
> *felt like facts related to those were relevant and, because of that, read
> the Melrose 2 complaint and factored in a portion of the allegations*.
>
> Q: *Have you done anything to assess the validity of the allegations
> contained in the Melrose 2 complaint?*
> A: *No.  I was unable to because I don't have the information available
> to be able to do it*.

(Fier Depo. at 354:2-20) (emphasis added).  Thus, Fier admitted that he has no basis in fact for

his testimony.

Fier also admitted that he knew nothing whatsoever, other than the Melrose 2

allegations, about the various bases for Melrose 2 damages he included in his report.  He knew

nothing about the affiliate payments.  [Ex. 46 at 102:5-103:3 ("Q: *Do you know why those

payments were made to the affiliated companies?*  A: *I mean, I don't know why.  I just know that

it appeared to me, based on the amended complaint*, that Paramount had agreed with plaintiffs in

another case that that was improper.") (emphasis added).]  He also admitted that he knew

nothing about the French Pay TV fee.  [*Id.* at 312:17-23 ("Q: *And the only information you have

about the French pay TV marketing is what you've read in the allegations asserted by Melrose 2;

right?*  A: *Correct*.  Q: *You've got no other independent research to validate those allegations?*

A: *Correct*.") (emphasis added).]  And he had no factual basis for his conclusions about

supposed underreporting of revenue or overreporting of costs, either.  [*Id.* at 315:16-23 ("Q:

Okay.  *So, again, you're just accepting the allegations in Melrose 2's complaint as valid?*  A:

*Accepting a -- a small portion of them, yes*.  Q:  *Okay.  You're accepting the allegations in their

entirety as it relates to the underreporting of net receipts for these films; right?*  A: *Yes*.")

(emphasis added).]  This is plainly speculation, allegation, and assumption, and renders Fier's

testimony about Melrose 2 clearly inadmissible.

Even if Fier could somehow rely on his unverified assumption that the Melrose 2

allegations were true (which he could not), Fier also made entirely unwarranted assumptions

about how the Melrose 2 allegations apply to the plaintiffs in this case.  For example, Fier

assumed that he could simply track the claim in the Melrose 2 complaint about "affiliate

payments" and apply it to different films for these plaintiffs in this case.  But the claim about

affiliate payments in the Melrose 2 Action was based upon specific contractual language in the

Melrose 2 Contract.  [Ex. 4; Ex. 46 at 268:20-269:4) (contractual language stating that payments

to third parties may be deducted from revenues, but defining such payments as "any amount

payable to any third person (other than Investor, Studio, or any Affiliate thereof).")]  This key

contractual language is entirely missing from the RPA at issue in this litigation, which defines

deductible payments as payments to "any third person," and does not contain any exclusion for

affiliates.  [Ex. 30; Ex. 46 at 119:4-120:12.]  As for the French Pay TV fee, Fier admitted that he

had no idea how this fee was allocated between films, which films it paid for, whether it had

been used to pay for any films that were included in the Melrose Slate at issue here, etc., despite

attributing the entirety of this fee for certain years to the plaintiffs here as damages.  [Ex. 46 at

310:23-312:23.] And Fier admitted no basis whatsoever for making additional adjustments to

revenues and costs for the "additional films" and did not check whether the plaintiffs in this action were factually or contractually entitled to the damages he assigned.  [*Id.* at 315:16-23.] Seen in any light, Fier's testimony is inadmissible.

Finally, plaintiffs may argue that they did not have any evidence to support Fier's conclusions because they did not obtain that evidence in discovery.  To the extent this issue had any relevance to the claims in this action (and they most certainly do not), plaintiffs failed to make any attempt to pursue discovery regarding the Melrose 2 claims despite the fact that the Melrose 2 Action was filed in 2011, and, as noted above, plaintiffs were clearly aware of these allegations during fact discovery in this case.  Indeed, plaintiffs' counsel, James Janowitz, asked multiple Paramount witnesses about the Melrose 2 litigation as early as June 2013.  In short, as shown below, not only are the Melrose 2 issues legally irrelevant to plaintiffs' damages, but plaintiffs had ample opportunity to seek discovery to investigate those issues here.  Instead, they chose to base Fier's report on nothing more than unproven allegations.

### B. The Melrose 2 Allegations Cannot Support A Claim For Damages By These Plaintiffs

Only relevant evidence is admissible. Fed. R. Evid. 402.  When a damages expert offers testimony that, under applicable standards, cannot provide a legally cognizable basis for a party's damages, that testimony must be excluded.  *See, e.g.*, *Koch* v. *Pechota*, 2013 WL 4834131, at *7-8 (S.D.N.Y. Sept. 9, 2013) (excluding damages expert testimony where relevant damages unavailable as a matter of law).  The Melrose 2 allegations are irrelevant to plaintiffs' damages case, because plaintiffs may only obtain damages based upon the liability portion of their case—that is, the allegedly fraudulent statements they have put at issue.  They may not claim damages based upon unrelated Melrose 2 contract reporting issues that were never the subject of the claims alleged in this case.

      **1.**      **The Alleged Contract Reporting Claims Were Not Proximately Caused By, And Not Foreseeable Harm Resulting From, The Alleged Misrepresentations About Risk Mitigation**

The plaintiffs in this case have pled three legal claims for relief: violations of Section 10(b) of the Securities Exchange Act and Rule 10b-5; fraud, under New York law; and unjust enrichment under New York law.  [TAC ¶¶ 96-121.]  Under each of these legal theories, to obtain damages plaintiffs must prove "loss causation."  That is, plaintiffs must prove not only that false statements by Paramount induced the plaintiffs to enter into a particular transaction (transaction causation), but that the fraudulent statement concealed a specific risk or masked a specific problem that ultimately was itself the cause of the plaintiffs' loss (loss causation).  As this Court has previously explained:  "to establish loss causation, a plaintiff must allege *that the subject of the fraudulent statement or omission* was the *cause* of an actual loss suffered—*i.e.*, *that the misstatement or omission concealed something* from the market that, when disclosed, negatively affected the value of the security."  *60223 Trust* v. *Goldman, Sachs & Co.*, 540 F. Supp. 2d 449, 459 (S.D.N.Y. 2007) (Griesa, J.) (emphasis added).

      The leading case on loss causation is *Lentell* v. *Merrill Lynch & Co.*, in which the Second Circuit held that, in a Rule 10b-5 case, to recover damages, a plaintiff must show both that a loss was a "foreseeable" consequence of the specific fraud pled, *and* that the loss be a direct result of the risk *concealed by the allegedly fraudulent statement*.  396 F.3d at 172-73 ("This Court's cases . . . require both that the loss be foreseeable and that the loss be caused by the materialization of the concealed risk"); *see also First Nationwide Bank* v. *Gelt Funding Corp.,* 27 F.3d 763, 769 (2d Cir. 1994) (in a fraud case, a plaintiff must show that "*the misstatements were the reason* the transaction turned out to be a losing one") (emphasis added); *Emergent Capital Inv. Mgmt., LLC* v. *Stonepath Group, Inc.*, 343 F.3d 189, 198 (2d Cir. 2003) (loss causation is satisfied where the plaintiffs "specifically assert[ ] a causal connection between

the concealed information . . . and the ultimate failure of the venture").  In short, "but for"

causation is not enough—a plaintiff may not allege a fraudulent transaction and then assert a

claim to any money in the world that is conceivably connected to the transaction.  Only the

subject matter of the fraudulent statement or concealment can create recoverable damages,

because that is the only loss proximately caused by the fraud alleged.

New York imposes an almost identical loss causation requirement in common law

fraud claims.  *See Laub* v. *Faessel*, 297 A.D.2d 28, 31-32 (1st Dep't 2002) (finding no loss

causation where the alleged misrepresentations were not the subject matter of the loss; "[t]o

establish causation, plaintiff must show both that defendant's misrepresentation induced plaintiff

to engage in the transaction in question (transaction causation) *and that the misrepresentations*

*directly caused the loss about which plaintiff complains* (loss causation)"); *see also Cathay Pac.*

*Airways, Ltd.* v. *Fly & See Travel, Inc.*, 3 F. Supp. 2d 443, 451 (S.D.N.Y. 1998) (to establish

fraud under New York law, "plaintiff must prove both transaction and loss causation");

*Greentech Research LLC* v. *Wissman*, 104 A.D.3d 540, 540 (1st Dep't 2013) (approving

dismissal of state-law fraud case for failure to show "loss causation").  The same loss causation

rule applies to New York unjust enrichment claims.  *In re Apple REITs Litig.*, 2013 WL

1386202, at *16-18 (E.D.N.Y. Apr. 3, 2013) (failure to demonstrate element of loss causation

required dismissal of state-law unjust enrichment claim); *cf. Castellano* v. *Young & Rubicam,*

*Inc.*, 257 F.3d 171, 191 (2d Cir. 2001) (reversing dismissal of unjust enrichment claim where

there was "sufficient evidence of loss causation").

The loss causation rule unquestionably bars plaintiffs from using the Melrose 2

allegations in their damages calculation.  This action, as pled, concerns only a single, specifically

alleged fraud by Paramount: plaintiffs claim that the offering documents upon which plaintiffs

relied upon investing in securities failed to disclose a change in Paramount's "risk mitigation" strategy concerning the use of "foreign pre-sales." [TAC ¶¶ 28-51.] The Melrose 2 allegations, by contrast, are about contractual issues such as affiliate payments, the French Pay TV fee, and other adjustments to costs and receipts on certain of the Melrose 2 (but not Melrose) films. [Ex. 30.] The Melrose 2 allegations do not concern plaintiffs—who were not parties to either of the Melrose or Melrose 2 contracts.

Further, the Melrose 2 allegations in no way, shape, or form relate to foreign pre-sales, risk mitigation techniques, or anything else that the plaintiffs here have asserted in their TAC was the subject matter of actionable misstatements of fact. The alleged contract reporting issues would have occurred, to the extent they even did, regardless of any alleged representations about risk mitigation that form the basis of plaintiffs' claims here. Thus, there is simply not a legally sufficient connection between the alleged misrepresentations here and the Melrose 2 allegations; the Melrose 2 allegations were not in any way related to or "concealed" by the purported misrepresentations at issue in this case.

### 2. Plaintiffs, In Any Event, Do Not Have Standing To Assert Contract Reporting Claims Against Paramount On Behalf of The Melrose Entity

There is another reason why plaintiffs should be limited to damages directly linked to the facts they claim were allegedly misrepresented, and not the contract reporting issues raised in the Melrose 2 case. The Melrose 2 allegations concern (alleged) contract reporting improprieties that occurred, even on Fier's wholly unsubstantiated theory based on Melrose unproven allegations, years *after* the plaintiffs here purchased debt securities or limited liability company shares in the Melrose entity 2004. [Ex. 30.] Fier assumed not only that these Melrose 2 allegations applied to Melrose, but that these particular plaintiffs, who were individual lenders to and, in the case of two plaintiffs, holders of limited liability interests in Melrose, have

personal standing to assert claims for overpayments or underpayments to Melrose.  But this is not the case.

Harm suffered by a failure of Paramount to make payments to the Melrose entity is harm to the Melrose entity itself, not to these plaintiff lenders/stockholders, and these plaintiffs have not brought a derivative action and lack standing to sue for such harm.  *Bartfield* v. *Murphy*, 578 F. Supp. 2d 638, 645-46 (S.D.N.Y. 2008) ("Generally, an individual only has standing to bring suit when a wrongful act injures a legal right or property interest he holds."). To the extent that the plaintiffs are mere lenders to Melrose LLC, they have only a contractual relationship with the Melrose entity, and cannot bring claims on its behalf (and in any event the plaintiffs have not satisfied the requirements for a derivative suit).  *See Howe* v. *Bank of N.Y. Mellon*, 783 F. Supp. 2d 466, 474-75 (S.D.N.Y. 2011) ("Under New York law, in order for a bondholder to bring a derivative suit against a corporation, the bonds in question must be convertible into the equity of that corporation.").  Nor may interest holders in an LLC, in their individual capacity and absent a derivative suit which is not present here and which the plaintiffs lack the ability to bring, seek damages that were suffered by the  entity in which they hold interests.  *See*, *e.g.*, *Cont'l Cas. Co.* v. *PricewaterhouseCoopers, LLP*, 15 N.Y.3d 264, 271 (2010); *Bartfield*, 578 F. Supp. 2d at 645-647 (finding direct/derivative distinction applies to LLC and dismissing derivative claims brought by individual interest holders).  Indeed, in 2010— over a year before the Melrose 2 complaint was filed—the plaintiffs in this action assigned away all of their interests in the Melrose entity.  [Ex. 5]  Thus, the plaintiffs here simply do not have, and never had, any standing to bring claims related to harms to the Melrose entity similar to those alleged in the Melrose 2 complaint.  There is simply not a viable legal basis for plaintiffs to obtain damages related to the Melrose 2 allegations.

**C.**    **Plaintiffs Are Precluded As A Matter of Law From Introducing A New Damages Theory In A Supplemental Expert Report**

Fier's proposed testimony is also procedurally barred.  Fier was not entitled to present an entirely new damages theory based upon the Melrose 2 allegations in purportedly "supplemental" expert reports, when he never mentioned this issue in his original expert report.

Paramount has filed a separate motion *in limine* on the issue of Fier's "supplemental" reports, and to avoid duplication refers the Court to the arguments therein.  In brief, Federal Rule of Civil Procedure 26(a)(2)(B) requires that expert witnesses disclose a report containing 'a complete statement of all opinions the witness will express and the basis and reasons for them.  Fed. R. Civ. P. 26(a)(2)(B).  "The expert report therefore defines the metes and bounds of an expert's trial testimony."  *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050, at *26 (N.D. Cal. June 19, 2009).  Thus, when plaintiffs disclosed Fier's original report on March 24, 2014, it should have "reflect[ed] his full knowledge and complete opinions on the issues for which his opinion ha[d] been sought."  *Sandata Techs., Inc.* v. *Infocrossing, Inc.*, 2007 WL 4157163, at *4 (S.D.N.Y. Nov. 16, 2007).

Although expert reports may in some instances be required to be supplemented under Rule 26(e) when information therein is "incomplete or incorrect," Courts have consistently instructed that this Rule may *not* be used to introduce new theories or conclusions that could have, but were not, included in the original expert report.  *See, e.g., In re Pfizer Sec. Litig.*, 2014 WL 3291230, at *1 (S.D.N.Y. July 8, 2014) ("To allow an expert to supplement his report in order to 'fill a significant and logical gap' in a previous report 'would eviscerate the purpose of the expert disclosure rules,' which are intended to give the opposing party adequate time to depose the expert on any material the expert will present as evidence and to prepare for trial.") (internal citation omitted); *Sandata Techs., Inc.*, 2007 WL 4157163, at *6 ("[E]xperts are not

free to continually bolster, strengthen, or improve their reports by endlessly researching the issues they already opined upon . . . [because] [i]f that were the case, there would never be any closure to expert discovery."); *see also Luke* v. *Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009) (Rule 26(e) is not a "loophole through which a party . . . who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline for doing so has passed").

 An unjustifiable "supplemental" expert report may also be precluded as a sanction under Federal Rule of Civil Procedure 37(c)(1), which provided that  "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  "Expert testimony exceeding the bounds of the expert's report is excludable pursuant to Rule 37(c)(1)."  *In re Kreta Shipping, S.A.*, 181 F.R.D. 273, 275 (S.D.N.Y. 1998).  The Second Circuit uses a four-part test to determine whether a Rule 37(c)(1) sanction is appropriate when, as here, there has been a clear failure of disclosure under Rule 26(a): "(1) [T]he party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance."  *Patterson* v. *Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (quoting *Softel, Inc.* v. *Dragon Med. & Scientific Comm., Inc.*, 118 F.3d 955, 961 (2d Cir. 1997)).

 Here, Fier conceded that he could have used the allegations in the Melrose 2 Action as part of his damages analysis when he filed his original expert report.  [Ex. 46 at 106:7-

107:2 ("Q: If the Melrose 2 complaint … was available before you issued your report, you could have included the arguments that you've subsequently included regarding Melrose 2? . . . A: Yes, I could have … I could have done that."); 110:24-111:1 ("Q: This information was available to you at the time you issued your original report? A: Yes").]  Fier's decision to include the Melrose 2 material only in a supplemental report or spreadsheet, without further analysis, is clearly not "substantially justified," and plaintiffs have no proper "explanation" for providing this late testimony.

Nor was Fier's use of this supplemental information "harmless."  For one thing, Fier has now prepared 5 different purportedly "supplemental" analyses using the Melrose 2 allegations, and Paramount cannot be certain which one plaintiffs will use at trial.  For another, because of the uncertainty created by Fier's reliance upon the Melrose 2 allegations, Paramount now has to prepare for a trial in which it may have to rebut those allegations, even though such issues were never part of plaintiffs' case until they served the supplemental expert reports. Paramount's prejudice from this new, unwarranted testimony is severe.

As to the two remaining factors identified by the Second Circuit in *Patterson*, a continuance is clearly inappropriate at this late date after years of discovery, and, while Paramount concedes that Fier is an important witness, it does not seek to exclude his entire testimony, only the specific testimony related to the Melrose 2 allegations.

Thus, Fier's "supplemental" analyses based on the Melrose 2 allegations should be precluded under Rule 37(c)(1),

**D.    The Melrose 2 Allegations Should Be Excluded Under F.R.E. 403**

Finally, Fier's testimony on the Melrose 2 allegations should be excluded under Federal Rule of Evidence 403 as more prejudicial than probative, as well as based on a likelihood of confusing the issues, wasting time, and cumulative evidence.  Fed. R. Evid. 403

21

Unrelated and unsupported allegations of contract reporting improprieties that have not been pled in this action are extremely prejudicial to Paramount and do nothing more than interject irrelevant issues that will cause jury confusion.  *See Malletier*, 525 F. Supp. 2d at 563 (precluding unreliable expert testimony under Rule 403).  Moreover, if plaintiffs are allowed to present Fier's Melrose 2 allegations at trial, Paramount will then need to present counter-evidence to demonstrate why the Melrose 2 allegations are not correct and/or inapplicable. There is a real risk that the trial in this matter will become excessively consumed with issues that are not part of the pleadings here and have nothing to do with the ultimate issues in this action. The far more appropriate course is for the Court to preclude unwarranted expert testimony from the plaintiffs on this issue.

## III.    CONCLUSION

For the foregoing reasons, the Court should exclude all evidence, testimony, and argument related to the Melrose 2 Action, and bar plaintiffs from seeking damages from the jury based upon their interpretation of allegations raised in the Melrose 2 Action.

Dated:    October 7, 2014
             New York, New York

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By:  s/Allan J. Arffa

22

Allan J. Arffa (aarffa@paulweiss.com)
Andrew J. Ehrlich (aehrlich@paulweiss.com)
Patrick J. Somers (psomers@paulweiss.com)

1285 Avenue of the Americas
New York, New York 10019
Tel: (212) 373-3000
Fax: (212) 757-3990


KENDALL BRILL & KLIEGER LLP
Richard B. Kendall (rkendall@kbkfirm.com)
Philip M. Kelly (pkelly@kbkfirm.com)

10100 Santa Monica Boulevard, Suite 1725
Los Angeles, California  90067
Tel:  (310) 556-2700
Fax: (310) 556-2705

*Attorneys for Defendant Paramount Pictures
Corporation*