James A. Janowitz
William L. Charron
Bryan T. Mohler
Benjamin S. Akley
Kathleen M. Prystowsky
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036
(212) 421-4100
jjanowitz@pryorcashman.com
wcharron@pryorcashman.com
bmohler@pryorcashman.com
bakley@pryorcashman.com
kprystowsky@pryorcashman.com
*Attorneys for Plaintiffs Allianz Risk Transfer AG,*
*Marathon Structured Finance Fund, LP,*
*NewStar Financial, Inc. and Munich Re Capital Markets New York, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- x
                                                                   :
ALLIANZ RISK TRANSFER AG,                                          :
MARATHON STRUCTURED FINANCE FUND, LP,                              :
NEWSTAR FINANCIAL, INC., and                                       :   No. 08-cv-10420 (TPG)
MUNICH RE CAPITAL MARKETS NEW YORK, INC.,                          :
                                                                   :
                    Plaintiffs,                                    :
                                                                   :
          -v-                                                      :
                                                                   :
PARAMOUNT PICTURES CORPORATION,                                    :
                                                                   :
                    Defendant.                                     :
                                                                   :
----------------------------------------------------------------- x

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 3 TO EXCLUDE EVIDENCE AND TESTIMONY CONCERNING A SEPARATE FRAUD CLAIM AGAINST PARAMOUNT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ..................................................................................................................... 4

    I.   Paramount Misapprehends the Role of the Melrose 2
        Data and the Claims in Plaintiffs' Expert Reports ........................................... 4

    II.  Paramount is Estopped From
        Challenging Plaintiffs' Expert Report ............................................................. 5

    III. Plaintiffs' Supplemental Reports Including the
        Melrose 2 Adjustment Are Timely And Not Unduly Prejudicial ..................... 6

CONCLUSION ................................................................................................................... 8

# TABLE OF AUTHORITIES

**CASES**                                                           **PAGE(s)**

*In re Air Crash at Dubrovnik, Croatia,*
    No. 3:98cv2464, 2001 U.S. Dist. LEXIS 14334 (D. Conn. June 4, 2001) ...........................5

*Air-India v. Goswami,*
    No. 91 Civ. 7290 (JSM), 1993 U.S. Dist. LEXIS 13977 (S.D.N.Y. Oct. 1, 1993) .............7

*Amorgianos v. AMTRAK,*
    303 F.3d 256 (2d Cir. 2002)..............................................................................................5

*Dreyer v. Ryder Automotive Carrier Group, Inc.,*
    367 F. Supp. 2d 413 (W.D.N.Y. 2005) ............................................................................5

*Fleming v. City of New York,*
    No. 01 Civ. 8885 (CM) (RLE), 2007 U.S. Dist. LEXIS 90114
    (S.D.N.Y. Dec. 5, 2007)....................................................................................................6

*Kam Hing Enterprises v. Wal-Mart Stores, Inc.,*
    359 F. App'x 235 (2d Cir. 2010) ..................................................................................5, 6

*Kawatra v. Medgar Evers College of City University of N.Y.,*
    700 F. Supp. 648 (E.D.N.Y. 1988) ..................................................................................7

*Lee Valley Tools, Ltd. v. Industrial Blade Co.,*
    288 F.R.D. 254 (W.D.N.Y. 2013)..................................................................................5, 6

*Parlour Enterprises, Inc. v. Kirin Group, Inc.,*
    152 Cal. App. 4th 281 (Cal. App. 4th. Dist. 2007) ............................................................5

*Shu-Tao Lin v. McDonnell Douglas Corp.,*
    742 F.2d 45 (2d Cir. 1984)...............................................................................................6

## STATUTES

Fed. R. Evid. 702 ......................................................................................................................5

Fed. R. Evid. 703 ......................................................................................................................5

Fed. R. Civ. P. 26(a) .................................................................................................................7

Fed. R. Civ. P. 26(e) .................................................................................................................7

Plaintiffs Allianz Risk Transfer AG ("Allianz"), Marathon Structured Finance Fund, LP ("Marathon"), NewStar Financial, Inc. (NewStar"), and Munich Re Capital Markets New York, Inc. ("MRCM" and, collectively, "Plaintiffs") respectfully submit this memorandum of law in opposition to defendant Paramount Pictures Corporation's ("Paramount") motion *in limine* Number 3 to exclude evidence and testimony concerning a separate fraud claim against Paramount.[1]

## PRELIMINARY STATEMENT

Paramount's motion *in limine* is an audacious attempt to profit from its wrongful failure to provide discovery in this case. The facts are simple:

1.  Until Paramount filed the rebuttal report of its expert, Robert Wunderlich, in April of this year, the case concerned only the 25 films in which Plaintiffs invested (the "Melrose Slate").

2.  The Wunderlich Report was based on summary data provided by Paramount's lawyers concerning 12 films not contained in the Melrose Slate (the "Melrose 2 Data").

3.  These additional 12 films were financed by another investor group (not Plaintiffs) known as "Melrose 2."

4.  The investors in Melrose 2 filed a lawsuit against Paramount, which ultimately settled, claiming that Paramount fraudulently overstated the costs and understated the revenues of the Melrose 2 Ultimates by a material amount.  This is the summary data on which Wunderlich's rebuttal expert report relies.

5.  To date, despite repeated requests, Paramount has never provided Plaintiffs with any of the underlying data concerning the 12 additional Melrose 2 films, leaving Plaintiffs with no way to test the reliability of the summary data on the 12 Melrose 2 films.

At the close of fact discovery in this case in early 2014, Paramount had not provided a scintilla of discovery regarding the Melrose 2 Data.  While Plaintiffs had asked for this

---

[1] Paramount's memorandum of law in support of its motion *in limine* Number 3 is cited herein as "Def. Br. No. 3 at __," and the omnibus exhibits Paramount submitted in connection with all its motions *in limine* are cited herein as "Def. Ex. __."  Plaintiffs' own exhibits attached to the accompanying Omnibus Declaration of James A. Janowitz are cited herein as "Ex. __."

information during discovery, Paramount asserted that it was not in any way relevant to this litigation; Plaintiffs did not dispute this and proceeded with expert discovery on this basis.

However, when Paramount's expert, Mr. Wunderlich, filed his rebuttal expert report, he criticized Plaintiffs for not using data from the Melrose 2 films and used the summary Melrose 2 Data to form the crux of his analysis. (Def. Ex. 18 at 2, 11-13.) In connection with Wunderlich's report, Plaintiffs were provided with a scant *three pages of summary data* of unknown origin, purporting to summarize the financial results of the 12 films in the Melrose 2 Slate (with a production budget of $717 million and revenues of over $2 billion). (Ex. 10.) Plaintiffs were told by Paramount to accept the Melrose 2 Data on faith despite its lack of provenance and despite the attacks on it by the Melrose 2 investors, who alleged that the data now relied upon by Wunderlich is, in fact, false. Paramount has made no effort to explain why its expert, Wunderlich, should be entitled to rely on data that has no provenance and has been attacked as false.

For months following the receipt of the Wunderlich Report, Plaintiffs have demanded, again and again, in writing and by motion, that Paramount provide discovery with respect to this critical data relied upon by their expert. (Exs. 8, 11.) Paramount has flatly refused. (Exs. 9, 13.)

As a result of Paramount's refusal to provide discovery with respect to the Melrose 2 Data upon which they relied, and in light of the Melrose 2 lawsuit, which casts serious doubt on the reliability of this summary data, Plaintiffs have adjusted the Melrose 2 Data using the Melrose 2 claims for guidance. In the absence of the opportunity to assess the reliability of the Melrose 2 Data by any other means, Plaintiffs' actions are entirely reasonable and proper.

Paramount, in its motion, now attempts to mislead the Court into believing that Plaintiffs had an opportunity to conduct discovery of the Melrose 2 Data, which bears upon the Melrose 2

2

investors' claim, and failed to do so.  Paramount's attempts to mislead the Court are apparent on

the face of its motion which provides, in critical part, as follows:

> **"Fier admitted unequivocally that he had done nothing to verify the accuracy of the statements in the Melrose 2 complaint. [transcript citations omitted] ("Q: Have you done anything to assess the validity of the allegations contained in the Melrose 2 complaint? A: No. I was unable to because I don't have the information available to be able to do it.") (Def. Br. No. 3 at 8)**

*     *     *

> **"... Fier admitted that he did nothing whatsoever to independently verify the accuracy of the Melrose assumptions..." (Def. Br. No. 3 at 10)**

*     *     *

> **"Nor did Fier do anything to verify them [the allegations] here." (Def. Br. No. 3 at 12)**

*     *     *

> **"...plaintiffs failed to make any attempt to pursue discovery regarding the Melrose 2 claims despite the fact that the Melrose 2 Action was filed in 2011..." (Def. Br. No. 3 at 14)**

All of the foregoing statements are false or misleading or both.  Despite the fact that it

was Paramount that refused to provide discovery on the Melrose 2 Data which it unilaterally

inserted into the case after the close of discovery, Paramount now brazenly attacks Plaintiffs and

their expert for their lack of knowledge concerning the reliability of the Melrose 2 Data and the

claims of the Melrose 2 investors:

> **"Fier also admitted that he knew nothing whatsoever, other than the Melrose 2 allegations, about the various bases for Melrose 2 damages he included in his report... He also admitted that he knew nothing about the French Pay TV fee." (Def. Br. No. 3 at 12)**

*     *     *

3

> **"And he had no factual basis for his conclusions about supposed underreporting of revenue or overreporting of costs, either." (Def. Br. No. 3 at 13)**

Paramount first introduced the suspect and summary Melrose 2 Data into the case in April 2014 (after maintaining throughout discovery it had "no relevance whatsoever") and opened the door to discovery concerning it. Paramount misleads the Court concerning Plaintiffs' persistent efforts to obtain discovery of the Melrose 2 Data. Having effectively barred Plaintiffs from such discovery, Paramount now criticizes Plaintiffs and their experts for having failed to obtain such discovery. Paramount cannot have it both ways – criticizing Plaintiffs for not using data they have never had access to and then preventing Plaintiffs from challenging the reliability of the same summary data.

## ARGUMENT[2]

### I.  Paramount Misapprehends the Role of the Melrose 2 Data and the Claims in Plaintiffs' Expert Reports

Paramount wrongly states that Plaintiffs are asserting a claim for damages based on the Melrose 2 allegations. Based upon this incorrect analysis, Paramount argues that Plaintiffs cannot assert such a claim because they are barred by the doctrine of loss causation. They argue that even if the allegations in the Melrose 2 complaint are true, they have nothing to do with the failure to make presales which is alleged to be the fundamental cause of Plaintiffs' damage in this case. However, Plaintiffs are not alleging the Melrose 2 allegations in this case. Rather, such allegations bear upon the reliability of the Melrose 2 Data, which is heavily relied upon by Paramount and its expert without *any* foundation for doing so.

Paramount's next argument that Plaintiffs lack standing to assert a claim relating to the Melrose 2 allegations fails for the same reason. Plaintiffs are not asserting claims which belong

---

[2] Plaintiffs presume the Court's familiarity with the procedural and factual background of this action.

4

to Melrose Investors LLC, or anyone else. Instead, Plaintiffs are using these allegations to question the reliability of the data upon which Paramount's expert relies, which they are unequivocally entitled to do. *See Kam Hing Enters. v. Wal-Mart Stores, Inc.*, 359 F. App'x 235, 237 (2d Cir. 2010); *Lee Valley Tools, Ltd. v. Indus. Blade Co.*, 288 F.R.D. 254, 266 (W.D.N.Y. 2013). Having been wrongfully prevented from taking discovery on such data, Plaintiffs rely on the only information available to them – the specific allegations of the Melrose 2 complaint. *See, e.g.*, *In re Air Crash at Dubrovnik, Croatia*, No. 3:98cv2464, 2001 U.S. Dist. LEXIS 14334, at *4-5 (D. Conn. June 4, 2001) (noting that expert relied on publicly available information). The Melrose 2 complaint allegations are directed against the very data with respect to the Melrose 2 films that form the core of Paramount's expert report.

## II.   Paramount is Estopped From Challenging Plaintiffs' Expert Report

Paramount attacks Mr. Fier's use of the allegations in the Melrose 2 complaint under Federal Rules of Evidence 702 and 703. However, it is Paramount whose expert report fails to meet the standard of Rule 702. In order to be admissible, "it is critical that an expert's analysis be reliable at every step," including the data upon which the analysis is based. *Amorgianos v. AMTRAK*, 303 F.3d 256, 267 (2d Cir. 2002).

The core of Paramount's expert report is based upon unreliable data as Paramount's own expert has failed to verify the accuracy and reliability of the summary Melrose 2 Data. (Ex. 5 at 169:17-171:7, 171:23-172:10.) *See Parlour Enters., Inc. v. Kirin Grp., Inc.*, 152 Cal. App. 4th 281 (Cal. App. 4th. Dist. 2007) (rejecting Wunderlich's lost profits calculations, because they were based on projections prepared by others, who were not known to Wunderlich); *see also Dreyer v. Ryder Auto. Carrier Grp., Inc.*, 367 F. Supp. 2d 413, 446 (W.D.N.Y. 2005) (holding defendants' expert's report to be "inadmissible under Rule 702 for lack of a reliable foundation"

where it was based upon unverified information provided by defendants to expert); *Fleming v. City of New York*, No. 01 Civ. 8885 (CM) (RLE), 2007 U.S. Dist. LEXIS 90114, at *9-10 (S.D.N.Y. Dec. 5, 2007) (granting "motion to exclude any expert testimony or evidence based on undisclosed data"); *Shu-Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 48 (2d Cir. 1984) (expert's report improperly admitted where it was "utterly unsupported by the record").

Compounding the problem, Paramount has refused to permit Plaintiffs to conduct discovery of the Melrose 2 Data or test it in any way despite the fact that specific allegations that it is unreliable and fraudulent have been publicly made and were settled, rather than dismissed. (Exs. 9, 13.)  In light of Paramount's wrongful conduct in preventing discovery into such data, Plaintiffs' expert should be entitled to employ the limited information at hand to question the underlying data. *See, e.g., Lee Valley*, 288 F.R.D. at 266 (acknowledging party's inability to effectively cross-examine opponent's expert witness because opponent "failed to provide [party] with the underlying data . . ."); *Kam Hing*, 359 F. App'x at 238 (finding prejudice to plaintiff because summary data gave "plaintiff [] no means of verifying or disputing" it).  Contrary to Paramount's assertions, Plaintiffs' expert is not formulating or asserting a claim based on the Melrose 2 allegations.  It is merely attempting to test the reliability of the data employed by Paramount's expert.

### III.   Plaintiffs' Supplemental Reports Including the Melrose 2 Adjustment Are Timely And Not Unduly Prejudicial

Until Wunderlich's report, there had been no mention whatsoever by Paramount of the twelve Melrose 2 films.  Wunderlich's report, which purports to be a "rebuttal," introduces an entirely new analysis based on data, which Paramount unilaterally excluded from discovery. Even after Wunderlich's report was filed, Paramount refused to permit any discovery with respect to the Melrose 2 films.  (Ex. 13.)  Mr. Fier, Plaintiffs' expert, responded to the analysis

based upon the Melrose 2 data after it had been identified for the first time by Wunderlich. It would have been impossible for Mr. Fier to have addressed the Melrose 2 data in his original report because (a) he did not know about Mr. Wunderlich's analysis and (b) he had no data to perform such an analysis. As for prejudice, Paramount has suffered none, and even if it had, it is a self-inflicted wound. *See Air-India v. Goswami*, No. 91 Civ. 7290 (JSM), 1993 U.S. Dist. LEXIS 13977, at *17 (S.D.N.Y. Oct. 1, 1993) (noting that "a party's gross negligence and failure to attempt to comply in good faith with its discovery obligations may justify adjudication of the case against it" where defendant had consistently failed to produce requested documents) (citation omitted); *Kawatra v. Medgar Evers Coll. of City Univ. of N.Y.*, 700 F. Supp. 648, 654 (E.D.N.Y. 1988) (finding that "any prejudice attributable to defendants' failure to" properly comply with discovery requirements "is entirely self-inflicted") (citations omitted). All Paramount needs to do to avoid such prejudice is to provide the discovery required under the Federal Rules. *See* Fed. R. Civ. P. 26(a), (e). If Plaintiffs are deprived of discovery into the Melrose 2 Data, it will constitute a fundamental breach of due process. Balancing this harm against Paramount's claimed prejudice requires that either the discovery be provided or the reference to the Melrose 2 claims be permitted.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Paramount's motion *in limine* Number 3, and further request that the Court grant Plaintiffs such other and further relief as the Court deems just and proper.

Dated: New York, New York
October 13, 2014

PRYOR CASHMAN LLP

By:  /s James A. Janowitz
         James A. Janowitz
         William L. Charron
         Bryan T. Mohler
         Benjamin S. Akley
         Kathleen M. Prystowsky
7 Times Square
New York, New York  10036
(212) 421-4100
*Attorneys for Plaintiffs*