**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K. GARRISON   (1946-1991)
RANDOLPH E. PAUL   (1946-1956)
SIMON H. RIFKIND   (1950-1995)
LOUIS S. WEISS   (1927-1950)
JOHN F. WHARTON   (1927-1977)

UNIT 3601, OFFICE TOWER A, BEIJING FORTUNE PLAZA
NO. 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
212-373-3203

WRITER'S DIRECT FACSIMILE
212-373-2116

WRITER'S DIRECT E-MAIL ADDRESS
AArffa@paulweiss.com

MATTHEW W. ABBOTT
ALLAN J. ARFFA
ROBERT A. ATKINS
DAVID J. BALL
JOHN F. BAUGHMAN
LYNN B. BAYARD
DANIEL J. BELLER
CRAIG A. BENSON
MITCHELL L. BERG
MARK S. BERGMAN
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
JAMES L. BROCHIN
RICHARD J. BRONSTEIN
DAVID W. BROWN
SUSANNA M. BUERGEL
PATRICK S. CAMPBELL*
JESSICA S. CAREY
JEANETTE K. CHAN
YVONNE Y. F. CHAN
LEWIS R. CLAYTON
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
CHARLES E. DAVIDOW
DOUGLAS R. DAVIS
THOMAS V. DE LA BASTIDE III
ARIEL J. DECKELBAUM
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
LESLIE GORDON FAGEN
MARC FALCONE
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
ROBERT C. FLEDER
MARTIN FLUMENBAUM
ANDREW J. FOLEY
HARRIS B. FREIDUS
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
ROBERT D. GOLDBAUM
NEIL GOLDMAN
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
GAINES GWATHMEY, III
ALAN S. HALPERIN
JUSTIN G. HAMILL
CLAUDIA HAMMERMAN
GERARD E. HARPER
BRIAN S. HERMANN
ROBERT M. HIRSH
MICHELE HIRSHMAN
MICHAEL S. HONG
DAVID S. HUNTINGTON
LORETTA A. IPPOLITO
JAREN JANGHORBANI
MEREDITH J. KANE
ROBERTA A. KAPLAN

BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY
BRIAN KIM
ALAN W. KORNBERG
DANIEL J. KRAMER
DAVID K. LAKHDHIR
STEPHEN P. LAMB*
JOHN E. LANGE
DANIEL J. LEFFELL
XIAOYU GREG LIU
JEFFREY D. MARELL
MARCO V. MASOTTI
EDWIN S. MAYNARD
DAVID W. MAYO
ELIZABETH R. McCOLM
MARK F. MENDELSOHN
WILLIAM B. MICHAEL
TOBY S. MYERSON
CATHERINE NYARADY
JANE B. O'BRIEN
ALEX YOUNG K. OH
BRAD R. OKUN
KELLEY D. PARKER
MARC E. PERLMUTTER
VALERIE E. RADWANER
CARL L. REISNER
LORIN L. REISNER
WALTER G. RICCIARDI
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JACQUELINE P. RUBIN
RAPHAEL M. RUSSO
ELIZABETH M. SACKSTEDER
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
DALE M. SARRO
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JAMES H. SCHWAB
JOHN M. SCOTT
STEPHEN J. SHIMSHAK
DAVID R. SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J. SIMONS
MARILYN SOBEL
AUDRA J. SOLOWAY
SCOTT M. SONTAG
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
ROBYN F. TARNOFSKY
MONICA K. THURMOND
DANIEL J. TOAL
LIZA M. VELAZQUEZ
MARIA T. VULLO
ALEXANDRA M. WALSH*
LAWRENCE G. WEE
THEODORE V WELLS, JR.
BETH A. WILKINSON
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
MARK B. WLAZLO
JULIA MASON WOOD
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

October 25, 2014

By ECF and E-mail

The Honorable Katherine B. Forrest
U.S. District Court, S.D.N.Y.
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

*Allianz Risk Transfer AG et al. v. Paramount Pictures Corp.,*
Case No. 1:08-cv-10420 (KBF)

Dear Judge Forrest:

       This firm, together with Kendall, Brill & Klieger LLP, represents defendant Paramount Pictures Corporation ("Paramount") in this matter. We write briefly in response to plaintiffs' letter submitted late last night [ECF No. 180] regarding the relevance of the testimony elicited by plaintiffs from Peter Hoffman, formerly of Merrill Lynch.

       To begin with, plaintiffs' letter does not in fact address the concerns that Your Honor raised at the end of trial on Thursday as to the relevance of plaintiffs' questioning of Mr. Hoffman. As Your Honor explained to plaintiffs, after plaintiffs' counsel questioned Mr. Hoffman at great length concerning an internal Merrill Lynch document that was never given to plaintiffs, "you can't take any of the statements here and use them as statements to the plaintiffs." (*Id.* at 705:11-12.) Such testimony, as Your Honor explained, was "meaningless." (*Id.* at 706:24.) Your Honor nonetheless

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Katherine B. Forrest							2

invited plaintiffs' counsel to submit a letter addressing how such testimony is relevant. (*Id.* at 711:5-8.) Plaintiffs' letter fails to do so.

To provide our own answer to Your Honor's question about relevance, we believe Mr. Hoffman can provide certain potentially relevant evidence as to the structure of the Melrose transaction and what information was or was not provided to plaintiffs about the Melrose transaction. For example, if Merrill Lynch received information about co-financing for the Melrose Slate of films from Paramount that Merrill Lynch did provide, or was free to provide, to plaintiffs, that fact would be potentially relevant to this action. Or, to the extent that plaintiffs made—or did not make—requests for information regarding co-financing to Merrill Lynch, such requests and Merrill Lynch's responses to them would also be potentially relevant. But the purely internal considerations of the Melrose transaction at Merrill Lynch on which plaintiffs' examination has focused thus far, which were never transmitted to plaintiffs, are simply not relevant.

Unfortunately, instead of attempting to provide any explanation for how internal Merrill Lynch considerations and communications are relevant, in their letter to Your Honor, plaintiffs offer various arguments concerning the merits of their case. In our view, their arguments are meritless and riddled with inaccuracies. While we will not respond here to every argument plaintiffs make in their letter, we feel compelled to respond briefly to some of the more outlandish arguments below:

*First*, plaintiffs grossly distort the figures in the historical dataset ("HDS") and Melrose Slate concerning the use of foreign pre-sales. As Paramount correctly explained in its opening, when defined as a license or sale of distribution rights in a small number (say, one to three) of foreign territories, the amount of foreign pre-sales in the HDS and Melrose slate were each relatively small.

Plaintiffs, in fact, appear to be using a variety of definitions and numbers in discussing the levels of foreign presales. Plaintiffs' damages expert, Mr. Fier, listed 5 (out of 25) films in the Melrose Slate as including foreign territory sales,[1] while the charts used at trial with their other expert, Mr. Sands, indicated that four of the twenty-five films in the Melrose Slate included foreign pre-sales. (E.g., PX 900.)[2] At other times, plaintiffs have claimed that there were only two territorial pre-sales in the Melrose Slate. (ECF No. 95, Pls' Opp'n to Def's Mot. for Summary Judgment at 7 n.5.)

---

[1]   ECF No. 134, Omnibus Declaration of Patrick J. Somers, dated October 7, 2014, Ex. 7 (March 24, 2004 Damages Report of Focus Advisory Services, LLC) at 26 (Table 7) ("Fier Report").

[2]   Citations to "PX __" refer to plaintiffs' exhibits.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Katherine B. Forrest                                               3

Using the numbers in Mr. Fier's report, the percentage of films with foreign pre-sales in the HDS was 49% (32 of 65), while the percentage in the Melrose Slate was 20% (5 of 25). (Fier Report at 23 (Table 6), 26 (Table 7).) Interestingly, using his same charts, the percentage of films with tax credits and shared pot deals *increased* from the HDS to the Melrose Slate, as did the level of "passive equity"—if the Melrose deal itself is included. This was the basis for the numbers presented to Your Honor in our opening.

*Second*, plaintiffs wrongly contend that the "evidence will show that Paramount specifically represented to Mr. Hoffman that its foreign pre-selling practices would indeed be in accordance with the HDS, just as Plaintiffs claim." (ECF No. 180 at 2.) To the contrary, we believe that, based on Mr. Hoffman's deposition testimony and other testimony and relevant evidence, the evidence will show that no such representation was made. The evidence has shown, and will show, that Paramount never made any assurance or guarantee that any co-financing technique in the HDS, including foreign pre-sales, would be used to the same extent in the Melrose Slate.

*Third*, plaintiffs also misconstrue the evidence that they cite in their letter. For example, plaintiffs claim that PX 304 reflects that Paramount told Mr. Hoffman to "to analyze the deal according to Paramount's historical risk-mitigation strategy, including Paramount's well-known . . . reliance upon 'territorial sales.'" (ECF 180 at 2.) Although plaintiffs place quotation marks around the term "territorial sales," suggesting that this term appears in PX 304, it does not. At best, PX 304 suggests an internal view by Merrill Lynch that Paramount is "the most fiscally disciplined of all the major studios." (PX 304 at BOA-ML_00016777.) That view, however, does not demonstrate that Paramount "began feeding misinformation about its foreign pre-selling intention to Mr. Hoffman." (ECF 180 at 2.) Nor does it overcome Your Honor's concerns that Merrill Lynch's internal documents are irrelevant to the central question in this case of whether *Paramount* engaged in a scheme to defraud *plaintiffs* with respect to foreign pre-sales of films in the Melrose Slate.

*Finally*, plaintiffs' discussion about the *Wall Street Journal* article and an email from Mr. McGrath concerning that article (PX 330 and PX 331, respectively) completely undermines any contention of fraud. As Your Honor will recall, in their opening, plaintiffs contended that a notation in a presentation to the Viacom Board of Directors, stating "Retain More Foreign Rights," somehow confirmed that plaintiffs had made a decision as to foreign pre-sales that was fraudulently concealed from the plaintiffs. (Trial Tr. at 56:3-57:2, referring to PX 329 at Viacom-Melrose00000026.) Yet, as plaintiffs' own discussion of the email from Mr. McGrath to Mr. Palmer concedes, Paramount (a) disclosed this very language from the presentation to Merrill Lynch, (b) informed Merrill Lynch that the "mix of [co-financing] deals changes all the time and will change during the life of [the Melrose] transaction," (PX 331 at BOA-ML_00037937) and (c) according to plaintiffs themselves, "expected" Mr. Hoffman to convey "this information to others." (ECF 180 at 3.) At the least, Merrill Lynch was free

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Katherine B. Forrest							4

to share the supposedly critical information with investors if any investors asked it to do so.

Accordingly, if anything, the document confirms that there was no effort to conceal anything from investors.

Consistent with the above, plaintiffs' further examination of Mr. Hoffman should be limited to documents and testimony that are relevant to this action. We appreciate the Court's willingness to permit the parties to be heard on this matter.

Respectfully submitted,

*Allan J. Arffa*

Allan J. Arffa

cc:	All counsel of record (by ECF and e-mail)